MARY E. ALEXANDER, ESQ. (SBN: 104173)
Mary Alexander & Associates, P.C.
44 Montgomery Street, Suite 1303
San Francisco, California 94104
Telephone: (415) 433-4440
Facsimile: (415) 433-5440
Email: malexander@maryalexanderlaw.com

ELIZABETH J. CABRASER (SBN: 083151)
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
Email: ecabraser@lchb.com

GRETCHEN NELSON (SBN: 112566)
Nelson & Fraenkel LLP
601 So. Figueroa Street, Suite 2050
Los Angeles, CA 90017
Telephone: (213) 622-6469
Facsimile: (213) 622-6019
Email: gnelson@nflawfirm.com

*Attorneys for Plaintiffs*
[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

ROBERT ARCHER; MARLENE ARCHER; JACQUELINE GRAHAM; ROBERT GRAHAM; PAMELA GIUSTI; MICHAEL GIUSTI; VALERIE PASQUINI WILLSEA; MICHAEL R. NEKY; GINA M. PALLOTTA; JOSEPH CLARK; VIOLA CLARK; JEFFREY SKINNER; BRENDA SKINNER; RAUL PANGILINAN; DENCY PANGILINAN; ARLINDA PANGILINAN; RIZALINA RUNAS; MARISSA SMITH; JULIAN SMITH; PATRICIA MCFADDEN; ALLEN MCFADDEN; GLORIA PRESLEY; JESSE PRESLEY; JANIE HARRISON; JULIE PHILLIPS; MARIA

*[Caption continued on following page]*

Case No.: 2:20-cv-04203

**FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES**

1. NEGLIGENCE
2. GROSS NEGLIGENCE
3. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
4. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**DEMAND FOR JURY TRIAL**

1

2 MAGOS; RAYMOND PENA; JOHN
BEKHAZI; MIRNA BEKHAZI; NANCY
3 ALVIS; LEONARD OWEN; DOROTHY
OWEN; CHARLES NURRE; LEIGH
4 NURRE; AMY ROTHMAN; JORDAN
BLYNN; GENE QIN; DIANA GONG;
5 GARY PILGRAM; SHARON
PILGRAM; SAMUEL ARREAGA;
6 HILDA ARREAGA; DAVID CHEN;
JEAN CHEN; KATHERINE HINTON;
7 NORMA BERKOWITZ; DEBRA
LEONELLI; DAVID REGE; ROSANN
8 EADS; BILL J. EADS, SR.; EDNA
PELAYO; NICHOLAS ALLEN; ANNA
9 ALLEN; SUZANNE SUWANDA;
JOSEPH BALLIN; VICTORIA BALLIN,
10 DAVID LEANDRES, DIANNE
LEANDRES, GURVINDER BHASIN,
11 HARVINDER BHASIN, PATRICIA
MCGINNIS, and MARITESS MILLER,
12 on behalf of themselves and all others
similarly situated,

13

14          Plaintiffs,
         vs.

15 CARNIVAL CORPORATION;
16 CARNIVAL PLC and PRINCESS
CRUISE LINES LTD.,

17          Defendants.

18

19          **COMPLAINT AND JURY DEMAND**

20          Individual and representative Plaintiffs ROBERT ARCHER, MARLENE

21 ARCHER, PAMELA GIUSTI, MICHAEL GIUSTI, VALERIE PASQUINI

22 WILLSEA, MICHAEL R. NEKY, GINA M. PALLOTTA, JOSEPH CLARK,

23 VIOLA CLARK, RAUL PANGILINAN, DENCY PANGILINAN, AMY

24 ROTHMAN, JORDAN BLYNN, JOSEPH BALLIN, VICTORIA BALLIN,

25 DAVID LEANDRES, AND DIANNE LEANDRES, bring this action for

26 themselves and on behalf of all persons similarly situated, including individual

27 Plaintiffs JACQUELINE GRAHAM, ROBERT GRAHAM, JEFFREY SKINNER,

28 BRENDA SKINNER, ARLINDA PANGILINAN, RIZALINA RUNAS,

- 2 -

MARISSA SMITH, JULIAN SMITH, PATRICIA MCFADDEN, ALLEN
MCFADDEN, GLORIA PRESLEY, JESSE PRESLEY, JANIE HARRISON,
JULIE PHILLIPS, MARIA MAGOS, RAYMOND PENA, JOHN BEKHAZI,
MIRNA BEKHAZI, NANCY ALVIS, LEONARD OWEN, DOROTHY OWEN,
CHARLES NURRE, LEIGH NURRE, GENE QIN, DIANA GONG, GARY
PILGRAM, SHARON PILGRAM, SAMUEL ARREAGA, HILDA ARREAGA,
DAVID CHEN, JEAN CHEN, KATHERINE HINTON, NORMA BERKOWITZ,
DEBRA LEONELLI, DAVID REGE, ROSANNE EADS, BILL J. EADS, SR.,
EDNA PELAYO, NICHOLAS ALLEN, ANNA ALLEN, SUZANNE
SUWANDA, GURVINDER BHASIN, HARVINDER BHASIN, PATRICIA
MCGINNIS, and MARITESS MILLER, and the more than 2,000 passengers who
sailed on the roundtrip Motor Vessel ("M/V") GRAND PRINCESS cruise from
San Francisco, California on February 21, 2020, to Hawaii, against Defendants,
PRINCESS CRUISE LINES LTD. ("PRINCESS"), its parent companies
CARNIVAL CORPORATION & CARNIVAL PLC (collectively, "CARNIVAL")
and allege:

## THE PARTIES

1.      Individual and representative Plaintiff Robert Archer is *sui juris*, and is
a resident of San Francisco County, California and was a passenger onboard the
Grand Princess cruise from February 21, 2020, to disembarkation on or about
March 10, 2020.

2.      Individual and representative Plaintiff Marlene Archer is *sui juris*, and
is a resident of San Francisco County, California and was a passenger onboard the
Grand Princess cruise from February 21, 2020, to disembarkation on or about
March 10, 2020.

3.      Individual and representative Plaintiff Pamela Giusti is *sui juris*, and is
a resident of San Mateo County, California and was a passenger onboard the Grand

Princess cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

4.     Individual and representative Plaintiff Michael Giusti is *sui juris*, and is a resident of San Mateo County, California and was a passenger onboard the Grand Princess cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

5.     Individual and representative Plaintiff Valerie Pasquini Willsea is *sui juris*, is a resident of San Mateo County, California and was a passenger onboard the Grand Princess cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

6.     Individual and representative Plaintiff Michael R. Neky is *sui juris*, is a resident of Stanislaus County, California and was a passenger onboard the Grand Princess cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

7.     Individual and representative Plaintiff Gina M. Pallotta is *sui juris*, is a resident of Stanislaus County, California and was a passenger onboard the Grand Princess cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

8.     Individual and representative Plaintiff Joseph Clark is *sui juris*, and is a resident of Stanislaus County, California and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

9.     Individual and representative Plaintiff Viola Clark is *sui juris*, and is a resident of Stanislaus County, California and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

10.     Individual and representative Plaintiff Raul Pangilinan is *sui juris*, and is a resident of Contra Costa County, California and was a passenger onboard the

M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

11. Individual and representative Plaintiff Dency Pangilinan is *sui juris*, and is a resident of Contra Costa County, California and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

12. Individual and representative Plaintiff Amy Rothman is *sui juris*, and is a resident of Queens County, New York and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

13. Individual and representative Plaintiff Jordan Blynn is *sui juris*, and is a resident of Queens County, New York and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

14. Individual and representative Plaintiff Joseph Ballin is *sui juris*, and is a resident of Stone County, Missouri and was a passenger onboard the Grand Princess cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

15. Individual and representative Plaintiff Victoria Ballin is *sui juris*, and is a resident of Stone County, Missouri and was a passenger onboard the Grand Princess cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

16. Individual and representative Plaintiff David Leandres is *sui juris*, and is a resident of Washington County, Oregon and was a passenger onboard the Grand Princess cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

17. Individual and representative Plaintiff Dianne Leandres is *sui juris*, and is a resident of Washington County, Oregon and was a passenger onboard the

Grand Princess cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

18.     Individual Plaintiff Jacqueline Graham is *sui juris*, and is a resident of San Francisco County, California and was a passenger onboard the Grand Princess cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

19.     Individual Plaintiff Robert Graham is *sui juris*, and is a resident of San Francisco County, California and was a passenger onboard the Grand Princess cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

20.     Individual Plaintiff Jeffrey Skinner is *sui juris*, is a resident of Sacramento County, California and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

21.     Individual Plaintiff Brenda Skinner is *sui juris*, is a resident of Sacramento County, California and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

22.     Individual Plaintiff Arlinda Pangilinan is *sui juris*, is a resident of San Joaquin County, California and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

23.     Individual Plaintiff Rizalina Runas is *sui juris*, is a resident of San Joaquin County, California and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

24.     Individual Plaintiff Marissa Smith is *sui juris*, is a resident of Bernalillo County, New Mexico and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

25.     Individual Plaintiff Julian Smith is *sui juris*, is a resident of Barnalillo County, New Mexico and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

26.     Individual Plaintiff Patricia McFadden is *sui juris*, is a resident of Solano County, California and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

27.     Individual Plaintiff Allen McFadden is *sui juris*, is a resident of Solano County, California and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

28.     Individual Plaintiff Gloria Presley is *sui juris*, is a resident of Contra Costa County, California and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

29.     Individual Plaintiff Jesse Presley is *sui juris*, is a resident of Contra Costa County, California and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

30.     Individual Plaintiff Janie Harrison is *sui juris*, is a resident of Solano County, California and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

31.     Individual Plaintiff Julie Phillips is *sui juris*, is a resident of Antelope County, Nebraska and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

32.     Individual Plaintiff Maria Magos is *sui juris*, is a resident of Fresno County, California and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

33.     Individual Plaintiff Raymond Pena is *sui juris*, is a resident of Fresno County, California and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

34.     Individual Plaintiff John Bekhazi is *sui juris*, is a resident of Benton County, Washington and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

35.     Individual Plaintiff Mirna Bekhazi is *sui juris*, is a resident of Benton County, Washington and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

36.     Individual Plaintiff Nancy Alvis is *sui juris*, is a resident of Klamath County, Oregon and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

37.     Individual Plaintiff Leonard Owen is *sui juris*, is a resident of Contra Costa County, California and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

38.     Individual Plaintiff Dorothy Owen is *sui juris*, is a resident of Contra Costa County, California and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

39.     Individual Plaintiff Charles Nurre is *sui juris*, is a resident of Sacramento County, California and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

40.     Individual Plaintiff Leigh Nurre is *sui juris*, is a resident of Sacramento County, California and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

41.     Individual Plaintiff Gene Qin is *sui juris*, is a resident of San Francisco County, California and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

42.     Individual Plaintiff Diana Gong is *sui juris*, is a resident of San Francisco County, California and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

43.     Individual Plaintiff Gary Pilgram is *sui juris*, is a resident of Marin County, California and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

44.     Individual Plaintiff Sharon Pilgram is *sui juris*, is a resident of Marin County, California and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

45.     Individual Plaintiff Samuel Arreaga is *sui juris*, is a resident of San Joaquin County, California and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

46.     Individual Plaintiff Hilda Arreaga is *sui juris*, is a resident of San Joaquin County, California and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

47.     Individual Plaintiff David Chen is *sui juris*, is a resident of San Mateo County, California and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

48.     Individual Plaintiff Jean Chen is *sui juris*, is a resident of San Mateo County California and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

49.     Individual Plaintiff Katherine Hinton is *sui juris*, is a resident of Napa County, California and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

50.     Individual Plaintiff Norma Berkowitz is *sui juris*, is a resident of Nevada County, California and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

51.     Individual Plaintiff Debra Leonelli is *sui juris*, is a resident of San Francisco County, California and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

52.     Individual Plaintiff David Rege is *sui juris*, is a resident of San Francisco County, California and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

53.     Individual Plaintiff Rosann Eads is *sui juris*, is a resident of Placer County, California and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

54.     Individual Plaintiff Bill J. Eads, Sr. is *sui juris*, is a resident of Placer County, California and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

55.     Individual Plaintiff Edna Pelayo is *sui juris*, is a resident of San Joaquin County, California and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

56.     Individual Plaintiff Nicholas Allen is *sui juris*, is a resident of San Mateo County, California and was a passenger onboard the M/V GRAND

PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

57.     Individual Plaintiff Anna Allen is *sui juris*, is a resident of San Mateo County, California and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

58.     Individual Plaintiff Suzanne Suwanda is *sui juris*, is a resident of Santa Clara County, California and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

59.     Individual Plaintiff Gurvinder Bhasin is *sui juris*, is a resident of Alameda County, California and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

60.     Individual Plaintiff Harvinder Bhasin is *sui juris*, is a resident of Alameda County, California and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

61.     Individual Plaintiff Patricia McGinnis is *sui juris*, is a resident of Clackamas County, Oregon and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

62.     Individual Plaintiff Maritess Miller is *sui juris*, is a resident of Maricopa County, Arizona and was a passenger onboard the M/V GRAND PRINCESS cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

63.     Defendant CARNIVAL CORPORATION was incorporated in 1972 in Panama and has its headquarters in Miami, Florida.

1    64.    Defendant CARNIVAL PLC was incorporated in 2000, in Wales,

2    United Kingdom. It also has its headquarters in Miami, Florida.

3    65.    Upon information and belief, Defendant PRINCESS CRUISE LINES

4    LTD. is incorporated in Bermuda, with its headquarters in Santa Clarita, California.

5    66.    Upon information and belief, at all times hereto, CARNIVAL

6    CORPORATION, CARNIVAL PLC, and PRINCESS advertised, marketed, sold,

7    and profited (directly or indirectly) from and owned, controlled, and operated the

8    cruise ship, M/V GRAND PRINCESS.

9                    **ALTER EGO/PIERCING CORPORATE VEIL**

10    67.    Defendants CARNIVAL CORPORATION, CARNIVAL PLC, AND

11    PRINCESS are alter egos and/or agents of each other such that the corporate form

12    should be disregarded.

13    68.    CARNIVAL CORPORATION and CARNIVAL PLC operate as a

14    single economic enterprise. They share a senior executive management team and

15    identical Boards of Directors. Both CARNIVAL CORPORATION and

16    CARNIVAL PLC share a single headquarters in Miami, Florida.

17    69.    As described by CARNIVAL CORPORATION in a filing with the

18    Securities and Exchange Commission ("SEC"), "Carnival Corporation and Carnival

19    plc operate a dual listed company ('DLC'), whereby the businesses of Carnival

20    Corporation and Carnival plc are combined through a number of contracts and

21    through provisions in Carnival Corporation's Articles of Incorporation and By-

22    Laws and Carnival plc's Articles of Association."

23    70.    Plaintiff brings this lawsuit against CARNIVAL CORPORATION and

24    CARNIVAL PLC individually, but because the entities work as alter-egos and/or

25    agents of one another, Plaintiff refers to them collectively throughout this

26    Complaint as "CARNIVAL."

27    71.    In a federal criminal plea agreement signed by CARNIVAL in 2016,

28    CARNIVAL described PRINCESS as one of several "operating lines" that together

FIRST AMENDED COMPLAINT
No. 2:20-cv-04203

1   comprise the "Carnival Group" of companies. CARNIVAL stated that Princess and

2   the other cruise ship operating lines are semi- autonomous entities within the

3   Carnival Corporation and Carnival plc (formerly P&O Princess Cruises plc)

4   corporate umbrella.

5       72.    In that 2016 federal criminal plea agreement, CARNIVAL stated that

6   it "currently monitors and supervises environmental, safety, security, and regulatory

7   requirements for Princess and other Carnival brands. Carnival Corporation & plc

8   operate a total of 101 ships visiting 700 ports around the world, including most

9   major ports in the United States."

10      73.    CARNIVAL has ownership and control over PRINCESS, which is

11  organized under Holland America Group within CARNIVAL. CARNIVAL has

12  claimed in filings with the SEC that it wholly owns PRINCESS as a subsidiary.

13      74.    CARNIVAL and PRINCESS share the same Board of Directors and

14  almost all of the same executive officers, and appear to use the same assets.

15      75.    CARNIVAL exerts control and domination over PRINCESS's

16  business and day-to-day operations.

17                          **JURISDICTION**

18      76.    This Court has Admiralty subject matter jurisdiction pursuant to 28

19  U.S.C. § 1333 as this case involves a maritime tort. The type of incident and

20  injuries suffered by Plaintiffs and the class had the potential to impact maritime

21  commerce as Plaintiffs and the class suffered harm and Plaintiffs and the class were

22  and continue to be at serious risk of imminent harm as a result of exposure to

23  COVID-19 aboard the cruise ship upon which they were paying passengers.

24      77.    This Court also has subject matter jurisdiction pursuant to the Class

25  Action Fairness Act, codified at 28 USC §1332(d)(2)(A) and (C), because the

26  claims of the proposed Class Members exceed $5,000,000 and because at least one

27  member of the Proposed Class of plaintiffs is a citizen of a state different from at

28  least one Defendant.

FIRST AMENDED COMPLAINT
No. 2:20-cv-04203

78.     This Court has personal jurisdiction over Defendants, who each conduct substantial business in this district.

79.     Defendant PRINCESS has its headquarters in Santa Clarita, California.

80.     Upon information and belief, CARNIVAL, including by and through its subsidiary, PRINCESS, markets cruise vacations to California residents and employs thousands of California residents to work at its California headquarters. The Court has personal jurisdiction over CARNIVAL because CARNIVAL is authorized to do business in California, conducts substantial business in California, and some of the actions giving rise to this Complaint took place in California.

81.     The claims asserted herein arise from Defendants' contacts with California.

82.     Additionally, each of the Defendants purports to be a party to the Passage Contract, which purports to name the Central District as proper venue to actions against Defendants. Although Plaintiffs do not concede the enforceability of the Passage Contract, by naming this District as a proper venue, Defendants have consented to personal jurisdiction in this District.

83.     Each of the facts pleaded herein independently, but also all of these facts together, are sufficient to render the exercise of jurisdiction by this Court over Defendants permissible under traditional notions of fair play and substantial justice.

**VENUE**

84.     Venue in the Central District of California is proper under 28 U.S.C. § 1391 because Defendants are deemed to reside in any judicial district in which they are subject to personal jurisdiction.

85.     Additionally, without conceding the enforceability of the Passage Contract, Plaintiffs acknowledge the inclusion in the Passage Contract of a venue selection provision designating the United States District Court for the Central District of California in Los Angeles as a proper venue for this action.

**FACTUAL BACKGROUND**

86.     In December 2019, a new strain of Coronavirus known as COVID-19 or SARS-CoV-2 was first observed in humans in China. The virus quickly spread through China and Asia and has caused a global pandemic. Infection with COVID-19 is generally associated with symptoms such as fever, a dry cough, shortness of breath, infection, pneumonia, and it can be fatal.

87.     Clinicians and public health experts continue to learn more about the virus and its effects on the human body. In addition to the cold- and flu-like symptoms COVID-19 patients typically experience, the virus has been linked to loss of taste and smell, blood clots, severe strokes, heart inflammation, acute kidney disease, intestinal damage, liver damage, and neurological problems.[1]

88.     As of the filing of this complaint, there have been over 1.7 million cases and over 103,000 deaths in the United States as a result of COVID-19. Over 2,000 cases and, as of this filing, 40 deaths have been reported in San Francisco, at least three of which were due to infections contracted while onboard the M/V GRAND PRINCESS—a ship owned and operated by Defendants.

89.     On January 30, 2020, the World Health Organization declared COVID-19 a global health emergency.

90.     In early February 2020, experts in the European Union, led by epidemiologist Dr. Christou Hadjichristodoulou, released guidelines for the cruise industry that included an outline of the risk of COVID-19 outbreaks aboard cruise ships and recommended response protocols.[2] Specifically, the guidelines directed

---

[1] Lenny Bernstein, Carolyn Y. Johnson, Sarah Kaplan and Laurie McGinley. Coronavirus destroys lungs. But doctors are finding its damage in kidneys, hearts, and elsewhere. The Washington Post. April 15, 2020. https://www.washingtonpost.com/health/coronavirus-destroys-lungs-but-doctors-are-finding-its-damage-in-kidneys-hearts-and-elsewhere/2020/04/14/7ff71ee0-7db1-11ea-a3ee-13e1ae0a3571_story.html (last visited April 29, 2020).

[2] Interim Advice for Preparedness and Response to Cases of Acute Respiratory Disease at Points of Entry in the European Union (EU) / EEA Member States (MS): Advice for ship operators for preparednessand response to the outbreak of 2019-

FIRST AMENDED COMPLAINT
No. 2:20-cv-04203

that, in the event of a COVID-19 case, close contacts of the case should be quarantined in their cabin or on shore, and "casual contacts" should be disembarked.[3]

91.     Defendants CARNIVAL and PRINCESS represent that they have a commitment to "the health, safety, and security" of their passengers and promote their business as one that "always strives to be free of injuries, illness and loss."[4] They further assert that they "[s]upport a proactive framework of risk mitigation in the areas of HESS [Health, Environment, Safety, Security] aimed at preventing, monitoring and responding to threats."[5]

92.     However, in or before early February 2020, Defendants became aware of an outbreak of COVID-19 aboard the cruise ship the DIAMOND PRINCESS, which is operated by CARNIVAL and PRINCESS. The outbreak originated on the DIAMOND PRINCESS while the vessel was docked in Yokohama, Japan. Ten cases were originally diagnosed, and that number rapidly escalated to over 700 cases—over one-fifth of the passengers onboard. Investigative reporting about the DIAMOND PRINCESS alleges that well after CARNIVAL and PRINCESS

nCoV acute respiratory disease, Feb. 3, 2020, https://www.gac.com/491364/siteassets/about-gac/coronavirus/eu-interim-advice_2019-ncov_maritime_4_2_2020_f.pdf (last visited April 6, 2020); *see also* Matt Apuzzo, Motoko Rich and David Yaffe-Bellany, *Failures on Diamond PrincessShadow Another Cruise Ship Outbreak*, The New York Times, March 8, 2020, https://www.nytimes.com/2020/03/08/world/asia/coronavirus-cruise-ship.html (last visited April 6, 2020).

[3] Healthy GateWays, Algorithm for decision making in response to an event of a suspect case of COVID-19, https://www.nytimes.com/2020/03/08/world/asia/coronavirus-cruise-ship.html (last visited April 6, 2020).

[4] Carnival Health, Environment, Safety, Security & Sustainability Policy & Governance, Carnival Health, Environment, Safety, Security & Sustainability Policy & Governance, https://www.carnivalcorp.com/leading-responsibly/health-environment-safety-security-sustainability-policy-governance/ (last visited April 7, 2020).

[5] Carnival Corporation & PLC Health, Environmental, Safety, Security, and Sustainability Corporate Policy, https://www.carnivalcorp.com/static-files/0b8327aa-c3be-4022-a1a5-a6dad7123af7 (last visited April 7, 2020).

- 16 -

became aware of the first case aboard the ship, Defendants worked to "keep the fun going" by "encouraging [guests] to mingle."[6]

93.     To date, 14 of the DIAMOND PRINCESS's passengers have died as a result of COVID-19.[7] At least two of these fatalities occurred before February 19, 2020.[8]

94.     In a February 18, 2020, update issued in response to the crisis aboard the DIAMOND PRINCESS, the Center for Disease Control (CDC) stated that "the rate of new reports of positives [now] on board, especially among those without symptoms, highlights the high burden of infection on the ship and potential for ongoing risk."[9]

95.     Upon information and belief, in February, CARNIVAL also operated a voyage on the RUBY PRINCESS, from New Zealand to Australia. News reports suggest that in mid-to-late February, Defendants became aware of COVID-19 cases onboard the RUBY PRINCESS. Despite this information, CARNIVAL operated a second voyage on the RUBY PRINCESS, immediately following the New Zealand-to-Australia voyage. Since the vessel docked in Australia on March 19, over 600 passengers who were on the RUBY PRINCESS have tested positive for the virus and 10 have died. Australian authorities have announced a criminal investigation into the matter.

---

[6] Austin Carr and Chris Palmieri, *Socially Distance This: Carnival Executives Knew They Had a Virus Problem, But Kept the Party Going*, Bloomberg, April 16, 2020,  https://www.bloomberg.com/features/2020-carnival-cruise-coronavirus/ (last visited April 20, 2020).

[7] Lauren Smiley, *27 Days in Tokyo Bay: What Happened on the Diamond Princess*, Wired, May 13, 2020, https://www.wired.com/story/diamond-princess-coronavirus-covid-19-tokyo-bay/.

[8] *See* The New York Times, *Japan Reports 2 Deaths Among Cruise Ship Passengers*, Feb. 19, 2020, https://www.nytimes.com/2020/02/19/world/asia/china-coronavirus.html (last visited April 6, 2020).

[9] *See* Centers for Disease Control and Prevention, Update on the Diamond Princess Cruise Ship in Japan, Feb. 18, 2020, https://www.cdc.gov/media/releases/2020/s0218-update-diamond-princess.html (last visited April 6, 2020).

- 17 -

96. To date, cruises run by CARNIVAL have been identified as responsible for more than 1,500 positive COVID-19 infections, and almost 40 deaths.

97. On February 11, 2020, Defendants operated a roundtrip voyage from San Francisco to Mexico aboard the M/V GRAND PRINCESS. On or around February 19, 2020, Defendants became aware of at least one passenger suffering from COVID-19 symptoms onboard the M/V GRAND PRINCESS.

98. According to CARNIVAL's Chief Medical Officer, Grant Tarling, MD, MPH, Defendants believed the infected passenger was already carrying the virus when he boarded the M/V GRAND PRINCESS on February 11, 2020.[10] Despite their knowledge regarding COVID-19, Defendants had no effective passenger medical screening methods in place at the time of boarding.

99. Dr. Tarling reported that the infected passenger sought medical treatment from the medical center onboard the M/V GRAND PRINCESS on February 20, 2020. The passenger reported suffering from "acute respiratory distress" for about a week before seeking treatment. Upon information and belief, this information would have triggered mandatory reporting under 42 CFR 71.1 *et seq.* and constitutes a "hazardous condition" per 33 CFR § 160.216.[11]

100. Upon information and belief, at least three other passengers on the M/V GRAND PRINCESS's Mexico trip suffered from COVID-19 symptoms while

---

[10] Thomas Fuller, John Eligon, and Jenny Gross, *Cruise Ship, Floating Symbol of America's Fear of Coronavirus, Docks in Oakland*, The New York Times, March 9, 2020, https://www.nytimes.com/2020/03/09/us/coronavirus-cruise-ship-oakland-grand-princess.html (last visited April 7, 2020).

[11] Section 160.216 requires that "[w]henever there is a hazardous condition … on board a vessel or caused by a vessel or its operation, the owner, agent, master, operator, or person in charge must immediately notify the nearest Coast Guard Sector Office . . . ." A "[h]azardous condition means any condition that may adversely affect the safety of any vessel … or the environmental quality of any port, harbor, or navigable waterway of the United States. It may, but need not, involve … injury *or illness of a person aboard* … ." 33 CFR § 160.202 (emphasis added).

on the vessel, likely exposing dozens of other passengers to the virus. At least 100 passengers who traveled on board the M/V GRAND PRINCESS have tested positive for COVID-19, and two passengers who traveled on the M/V GRAND PRINCESS's Mexico trip died after disembarking. One of these fatalities was the first-reported death caused by COVID-19 in California.[12]

101.   On February 21, 2020, the M/V GRAND PRINCESS arrived at port in San Francisco and some of the passengers from the Mexico trip disembarked.

102.   Approximately sixty-two passengers, at least two of whom were ill, and over 1,000 crew members remained onboard the M/V GRAND PRINCESS to continue traveling on the ship's next voyage, to Hawaii. Defendants did not implement any effective COVID-19 medical screening or examination procedures for crew or passengers who remained onboard and planned to travel on the Hawaii voyage.

103.   Defendants did not initiate effective measures to sanitize or disinfect the vessel in-between voyages, and did not implement any procedures for screening or testing existing or new passengers boarding the ship for the Hawaii-bound voyage.

104.   Defendants did not notify passengers who were scheduled to board the vessel on February 21, 2020, that passengers from the prior Mexico trip had reported COVID-19 symptoms, or of the fact that passengers remaining on board

---

[12] It has since been discovered that other Californians suffered from and died as a result of COVID-19 prior to the February 11, 2020 cruise aboard the M/V GRAND PRINCESS. Nevertheless the death of a Placer County resident who traveled on the M/V GRAND PRINCESS's February 11, 2020 cruise to Mexico spurred the state's initial stay-at-home orders. *See* Placer County Announces Death of Patient with COVID-19, March 4, 2020, https://www.placer.ca.gov/6438/Death-of-patient-with-COVID-19 (last visited May 19, 2020); Bill Chapel, *Coronavirus Deaths in Washington and California, Where Gov. Declares Emergency*, NPR, March 4, 2020, https://www.npr.org/sections/health-shots/2020/03/04/812121540/coronavirus-los-angeles-declares-emergency-and-u-s-reports-80-cases-in-13-states (last visited May 19, 2020).

the M/V GRAND PRINCESS had been exposed to and might be infected with and/or carrying the virus.

105.  On February 21, 2020, Plaintiffs embarked onto the M/V GRAND PRINCESS, and the ship departed the same day. The vessel sailed to Hawaii and made multiple stops on the Hawaiian Islands.

106.  On February 25, 2020, while Plaintiffs were in the midst of the Hawaii trip aboard the M/V GRAND PRINCESS, CARNIVAL and PRINCESS sent emails to passengers who disembarked from the San Francisco-to-Mexico trip on February 21. The email alerted the past passengers about their potential exposure to COVID-19 during their time on the cruise. No such notice was effectively provided to passengers who were onboard the ship on February 25, 2020.

107.  On February 29, 2020, the vessel left Hawaii.

108.  Upon information and belief, increased sanitary precautions did not begin onboard the M/V GRAND PRINCESS until on or about March 3, 2020.

109.  CARNIVAL and PRINCESS did not inform the passengers on board the M/V GRAND PRINCESS of COVID-19 cases in passengers who traveled on the ship's Mexico trip until March 4, 2020, when, early in the morning, the Plaintiffs and other members of the proposed Class received a health advisory. The advisory explained that the ship would no longer be traveling to Ensenada, Mexico, as originally scheduled for March 5, and would instead return directly to San Francisco. Further, the advisory alerted passengers to the investigation of a "small cluster of COVID-19 cases in Northern California connected to" the M/V GRAND PRINCESS's Mexico trip, and informed passengers of their potential exposure to the virus.

110.  Additionally, the advisory asserted that COVID-19 causes "mild illness is about 80% of cases," and that only "[a]bout 20% of people develop more severe symptoms."

111.   The March 4, 2020 health advisory suggested that passengers traveling on the Hawaii trip had already reported suffering from COVID-19 symptoms, and instructed other passengers who were experiencing or had at any time during the trip experienced symptoms "of acute respiratory illness with fever chills or cough" to immediately contact the ship's Medical Center. Finally, the advisory recommended that passengers wash their hands, use hand sanitizer, avoid contact with those suffering from respiratory illness, cover their noses and mouths when coughing and sneezing, and avoid touching their eyes and face. It did not make any recommendations for quarantine or social distancing measures.

112.   The March 4th health advisory was signed by Grant Tarling, MD, MPH , the Group Senior Vice President and Chief Medical Officer for CARNIVAL and its subsidiary PRINCESS. Tarling is the co-author of an article about respiratory viruses onboard cruise ships. The study acknowledged that cruise ships "represent a potential source for introduction of novel or antigenically drifted influenza virus strains to the United States" and that cruise ship characteristics, such as "close quarters and prolonged contact among travelers on ships and during land-based tours before embarkation, increase the risk of communicable disease transmission."[13]

113.   Upon information and belief, individuals who had continued on from the prior leg of the cruise to and from Mexico began cabin-based quarantine for the first time on or around March 4, 2020. At that time, Defendants cancelled only large public gatherings, and continued hosting other events that followed the "Princess Patter," including Formal Night and its associated dinner.

114.   Spurred by the COVID-19 outbreak on the M/V GRAND PRINCESS and the death of a passenger who had been on the Mexico trip, Governor Gavin

---

[13] Kimberly B. Rogers, MPH, Shahrokh Roohi, MPH, Timothy M. Uyeki, MD, *et al.*, *Laboratory-based respiratory virus surveillance pilot project on select cruise ships in Alaska, 2013-2015*, Journal of Travel Medicine 2017, 1-6, at 2 (2017).

Newsom declared a state of emergency on March 4, 2020, to manage the COVID-19 outbreak. As a result, the State of California refused to allow the vessel into port in San Francisco, forcing the vessel to anchor off the city's coast. Governor Newsom stated at a press conference that there were 11 passengers and 10 crew members experiencing symptoms.

115. On or about Thursday, March 5, 2020, two weeks after the ship sailed, Defendants instituted some operational changes, including cabin/state room quarantine, meal service within the cabins/state rooms, and cessation of daily turndown service and communal activities.

116. On or about March 9, 2020, the ship was allowed to sail and arrived in the San Francisco Bay escorted by the Coast Guard. The ship docked in the Port of Oakland met by ambulances and medical personnel. During the night, a CDC employee, in full hazmat gear, knocked on the door of the cabins asking passengers if they had any symptoms.

117. On or about March 10, 2020, passengers, including Plaintiffs, were finally allowed to disembark. Most were shuttled to Travis Air Force Base in Solano County, California for further quarantine. Other passengers were transported to Asilomar State Beach and Conference Grounds in Pacific Grove, or to other military bases, including Dobbins Air Force Base.

118. At the time of this filing, Defendant CARNIVAL has cancelled future cruises embarking from San Francisco through the end of 2020. However, CARNIVAL's website indicates that it intends to begin operating certain cruise ships as early as August 1, 2020, potentially posing grave threats to their passengers, crew members, and the public health.[14]

119. If Plaintiffs had known the serious and actual risks of contracting or spreading COVID-19 while onboard the M/V GRAND PRINCESS, including

---

[14] *See* Carnival, Health and Safety Updates, https://www.carnival.com/health-and-sailing-updates (last visited June 1, 2020).

1    because passengers from the M/V GRAND PRINCESS's San Francisco-to-Mexico

2    trip had suffered from COVID-19 and / or that passengers exposed to COVID-19

3    on the Mexico trip remained onboard the M/V GRAND PRINCESS, Plaintiffs

4    would not have sailed on the February 21, 2020, roundtrip voyage to Hawaii.

5         120.   As a direct and proximate result of Defendants' acts and omissions,

6    Plaintiff NANCY ALVIS became infected with COVID-19. She began showing

7    symptoms while onboard the M/V GRAND PRINCESS, but when she sought

8    medical care on the ship, the only aid she received was ibuprofen that was sent to

9    her cabin.

10        121.   As a direct and proximate result of Defendants' acts and omissions,

11   Plaintiff PAMELA GIUSTI became infected with and was diagnosed and treated

12   for COVID-19 in an intensive care unit at Kaiser Permanente Medical Center.

13        122.   As a direct and proximate result of the negligence and gross

14   negligence of Defendants in exposing Plaintiffs and Class Members to actual risk of

15   immediate physical injury, Plaintiffs and Class Members have suffered injuries and

16   emotional distress of the nature and type that reasonable persons would suffer under

17   the circumstances alleged in this Complaint, including, but not limited to, suffering

18   anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and

19   shame.

20        123.   Plaintiffs and Class Members were traumatized by the fear of

21   developing COVID-19 as well as by their confinement on an infected vessel in

22   isolation and for two weeks, on military bases, in some cases knowing that their

23   friends and loved ones were suffering from, or could contract, a potentially lethal

24   illness.

25        124.   Furthermore, as public health experts and physicians learn more about

26   the myriad ways COVID-19 attacks and damages the body, Plaintiffs and Class

27   Members develop new and evolving medical fears and uncertainties that require

28   and will continue to require medical diagnostic exams. Plaintiffs and the Class

Members are suffering and will continue to suffer due to the ever-present fear and anxiety that they will or may later experience negative health outcomes or complications as a direct and proximate result of being exposed to, and potentially contracting, COVID-19 because of Defendants' negligent and grossly negligent acts and omissions.

125.    It is expected that, as a result of Defendants' negligence and gross negligence, they will continue to suffer and will, in the future, require medical services outside of the kinds accepted as part of the typical wear and tear of daily life.

## NOTICE

126.    Section 16(A)(i) of the Passage Contract purports to require that claimants provide notice to PRINCESS and CARNIVAL of any potential claims. Although Plaintiffs do not concede that this provision is enforceable, Plaintiffs and Class Members have complied with this requirement by providing written notice to Defendants' electronically on April 7, 2020; April 20, 2020; April 27, 2020; May 1, 2020.

## CLASS ACTION ALLEGATIONS

127.    Plaintiffs bring this lawsuit as a class action on behalf of themselves and all similarly-situated persons pursuant to Federal Rules of Civil Procedure 23(a) and (b)(1), (b)(2), (b)(3), and/or (c)(4). This action satisfies the applicable numerosity, commonality, typicality, adequacy, predominance, and/or superiority requirements of those provisions.

128.    The proposed Class is defined as follows:  All persons in the United States, who sailed as passengers on the M/V GRAND PRINCESS cruise from San Francisco, California, leaving on February 21, 2020, roundtrip to Hawaii.

129.    Excluded from the proposed Class are: (1) CARNIVAL and PRINCESS, any entity or division in which either have a controlling interest, and its legal representatives, officers, directors, assigns and successors; (2) the judicial

officer(s) to whom this case is assigned and the judicial officer(s)' immediate

family and legal staff; and (3) governmental entities. Plaintiffs reserve the right to

amend the Class definition if discovery and further investigation reveal that the

Class should be expanded, otherwise divided into subclasses, or modified in any

other way.

130.   The individual Plaintiffs named in this complaint support the use of the

class action mechanism to achieve economy, efficiency, fairness and consistency of

result by determining the important common questions raised in this action on a

common basis.

### A.   **Numerosity**

131.   There were, on information and belief, approximately 2,422

passengers on the M/V GRAND PRINCESS for the cruise that is the subject of this

action. Their exact number and identities can be readily ascertained from

Defendants' records. The individual joinder of all passengers is impractical, and the

class action procedure is more practical, cost-effective, inclusive, and efficient than

multiple lawsuits on the common questions of law and fact that unite the class, or

piecemeal and incomplete individual joinder. The disposition of the claims of these

Class Members in a single action will provide substantial benefits to all parties and

to the Court. Class Members are readily identifiable from information and records

in PRINCESS'S possession, custody, or control, as well as from records kept by the

Department of Health and Human Services.

### B.   **Typicality**

132.   The claims of Plaintiffs are typical of the claims of Class Members in

that Plaintiffs, like all Class Members, sailed on the leg of the M/V GRAND

PRINCESS cruise that began on February 21, 2020. Plaintiffs, like all Class

Members, have been damaged by Defendants' misconduct in that they sailed on a

cruise they would not have sailed on and suffered significant injury, emotional

distress and economic damage caused by the negligence of the Defendants. The

factual bases of CARNIVAL and PRINCESS's misconduct are common to all Class Members and represent a common thread of misconduct resulting in injury to all Class Members.

### C. Adequate Representation

133. Plaintiffs ROBERT ARCHER, MARLENE ARCHER, PAMELA GIUSTI, MICHAEL GIUSTI, VALERIE PASQUINI WILLSEA, MICHAEL R. NEKY, GINA M. PALLOTTA, JOSEPH CLARK, VIOLA CLARK, RAUL PANGILINAN, DENCY PANGILINAN, AMY ROTHMAN, JORDAN BLYNN, JOSEPH BALLIN, VICTORIA BALLIN, DAVID LEANDRES, and DIANNE LEANDRES will fairly and adequately represent and protect the interests of the Class Members. Plaintiffs ROBERT ARCHER, MARLENE ARCHER, PAMELA GIUSTI, MICHAEL GIUSTI, VALERIE PASQUINI WILLSEA, MICHAEL R. NEKY, GINA M. PALLOTTA, JOSEPH CLARK, VIOLA CLARK, RAUL PANGILINAN, DENCY PANGILINAN, AMY ROTHMAN, JORDAN BLYNN, JOSEPH BALLIN, VICTORIA BALLIN, DAVID LEANDRES, and DIANNE LEANDRES have retained counsel with substantial experience in prosecuting class actions, aggregate suits, and mass torts.

134. Plaintiffs ROBERT ARCHER, MARLENE ARCHER, PAMELA GIUSTI, MICHAEL GIUSTI, VALERIE PASQUINI WILLSEA, MICHAEL R. NEKY, GINA M. PALLOTTA, JOSEPH CLARK, VIOLA CLARK, RAUL PANGILINAN, DENCY PANGILINAN, AMY ROTHMAN, JORDAN BLYNN, JOSEPH BALLIN, VICTORIA BALLIN, DAVID LEANDRES, and DIANNE LEANDRES and their counsel are committed to vigorously prosecuting this action on behalf of all Class Members, and have the financial resources to do so. Neither Plaintiffs ROBERT ARCHER, MARLENE ARCHER, PAMELA GIUSTI, MICHAEL GIUSTI, VALERIE PASQUINI WILLSEA, MICHAEL R. NEKY, GINA M. PALLOTTA, JOSEPH CLARK, VIOLA CLARK, RAUL PANGILINAN, DENCY PANGILINAN, AMY ROTHMAN, JORDAN BLYNN,

1    JOSEPH BALLIN, VICTORIA BALLIN, DAVID LEANDRES, and DIANNE

2    LEANDRES nor their counsel have interests adverse to those of the Class

3    Members.

4         **D.    Predominance of Common Issues**

5         135.   There are numerous questions of law and fact, including those related

6    to Defendants' knowledge, conduct, and duty throughout the events described in

7    this Complaint, common to Plaintiffs and Class Members that predominate over

8    any question affecting only individual Class Members, the answers to which will

9    advance resolution of the litigation as to all Class Members. These common legal

10   and factual issues include, *inter alia*:

11              a.      what Defendants knew about the presence and risks associated

12   with the COVID-19 virus, and contagions generally, and when they knew it;

13              b.      whether Defendants should have canceled the subject cruise to

14   avoid exposing passengers to a deadly pathogen and/or taken other steps to avoid

15   exposing passengers to a deadly pathogen;

16              c.      whether Defendants had a duty to decontaminate the M/V

17   GRAND PRINCESS after they knew or should have known that individuals who

18   had been aboard the M/V GRAND PRINCESS prior to the subject cruise were or

19   were potentially carriers of the COVID-19 virus, and/or after it had been disclosed

20   prior to embarking on the subject leg of the cruise that passengers on the

21   DIAMOND PRINCESS had perished due to the COVID-19 virus;

22              d.      whether Defendants knew or should have known that passengers

23   and crew who had been aboard the M/V GRAND PRINCESS prior to the subject

24   cruise were exposed to or were potentially carriers of the COVID-19 virus;

25              e.      whether the fact that prior passengers and crew had been

26   exposed to or were potential carriers of the COVID-19 virus constitutes a material

27   fact reasonable consumers would have considered in deciding whether to embark

28   on the subject cruise;

1        f.     whether Defendants had a duty to disclose that passengers and

2  crew who had been aboard the M/V GRAND PRINCESS prior to the subject cruise

3  were exposed to or were potentially carriers of the COVID-19 virus, and other

4  relevant information;

5        g.     whether Defendants failed to disclose that passengers and crew

6  who had been aboard the M/V GRAND PRINCESS prior to the subject cruise were

7  or were potentially carriers of the COVID-19 virus and other relevant information;

8        h.     interpretation of the applicable contract documents and the

9  associated "Passenger Bill of Rights" incorporated therein;

10        i.     whether Defendants acted as alter egos and/or agents, such that

11  they should be held jointly liable for the conduct alleged herein;

12        j.     whether CARNIVAL is liable for the acts, omissions, and

13  violations described in this Complaint;

14        k.     whether PRINCESS is liable for the acts, omissions, and

15  violations described in this Complaint; and

16        l.     whether the conduct of any or all of the defendants warrants the

17  imposition of punitive damages to vindicate the societal interest in punishment and

18  deterrence.

19      **E.**    **Superiority**

20      136.   Plaintiffs and Class Members have all suffered and will continue to

21  suffer harm and damages as a result of CARNIVAL's and PRINCESS's unlawful

22  and wrongful conduct. A class action is superior to other available methods for the

23  fair and efficient adjudication of this controversy.

24      137.   Absent a class action, most Class Members would likely find the cost

25  of litigating their claims prohibitively high and would therefore have no effective

26  remedy at law. Because of the relatively small size of the individual Class

27  Members' claims (compared to the cost of litigation), it is likely that only a few

28  Class Members could afford to seek legal redress for Defendants' misconduct.

1   Absent a class action, Class Members will continue to incur damages, and
2   Defendants' misconduct will continue without remedy.

3        138.   Class treatment of common questions of law and fact is superior to
4   other available procedures, such as multiple individual actions or piecemeal
5   litigation because class treatment will conserve the resources of the courts and the
6   litigants, and will promote consistency and efficiency of adjudication.

7        **F.**     **Limited Fund**

8        139.   In an abundance of caution, Plaintiffs take note of the presently
9   apparent financial circumstances of CARNIVAL and/or PRINCESS to allege the
10  possibility that their assets and resources available to fairly compensate Plaintiffs
11  and Class Members, to satisfy appropriate punitive damages awards, and/or
12  otherwise fairly address the claims against them may constitute a "limited fund"
13  within the meaning of *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), such that
14  class certification under Rule 23(b)(1)(B) is necessary and appropriate as a matter
15  of due process and equity.

16       **G.**     **Mass Action**

17       140.   In the alternative, this matter should proceed as a mass action, as
18  defined in 28 U.S.C. § 1332 (d)(11)(B)(i) and should be tried jointly on the ground
19  that plaintiffs' claims involve common questions of law or fact, including as set
20  forth above.

21       141.   Plaintiffs' individual claims exceed the required jurisdictional amount
22  of $75,000.00.

23                    **CLAIMS FOR RELIEF**

24                **FIRST CAUSE OF ACTION**
25     **NEGLIGENCE AGAINST ALL DEFENDANTS**

26       142.   Plaintiffs re-allege all allegations in all preceding paragraphs as if
27  alleged fully herein.

28

- 29 -

143.   Defendants owed Plaintiffs, and the Class, who were passengers who boarded the M/V GRAND PRINCESS on February 21, 2020, a duty to ensure that they would not be exposed to an unreasonable risk of harm.

144.   Likewise, Defendants owed Plaintiffs and the Class a duty to take actions to prevent and mitigate the risk of threats to passengers' health and safety, including by ensuring that the M/V GRAND PRINCESS was properly cleaned, disinfected, and safely maintained.

145.   Defendants knew or should have known that cruise ships pose an especially severe risk of viral outbreak. Defendants knew or should have known that cruise ships owned and operated by Defendants had been the sites of prior, lethal outbreaks of COVID-19, and should have been aware of new guidelines for the cruise industry published by Dr. Hadjichristoulou and a team of European experts on February 3, 2020. In particular, Defendants had knowledge of the actual risks facing passengers based on the outbreak of the virus on the DIAMOND PRINCESS a mere three weeks prior to the instant outbreak.

146.   Defendants knew or should have known that passengers traveling on the M/V GRAND PRINCESS had suffered COVID-19 symptoms and that passengers aboard the M/V GRAND PRINCESS's San Francisco-Mexico voyage who remained onboard the vessel for the instant voyage were or could have been exposed to and were or could have been carriers of the virus.

147.   Defendants knew or should have known that crew members aboard the M/V GRAND PRINCESS were or could have been exposed to COVID-19 and were or could have been carriers of the virus.

148.   Defendants failed to do what a reasonably careful cruise ship owner and operator would do under the circumstances.

149.   Defendants breached their duty to Plaintiffs and the Class when, with the aforementioned knowledge, Defendants nevertheless chose to embark on the San Francisco-Hawaii voyage.

150.   Defendants also breached their duties when, with that same knowledge, they chose not to screen or medically examine any passengers or crew, including the approximately sixty-two passengers and over 1,000 crew members who had traveled on the San Francisco-Mexico trip and were also traveling on the San Francisco-Hawaii trip.

151.   Defendants further breached their duties to Plaintiffs and the Class when, with the above-mentioned knowledge, Defendants boarded, without additional decontamination and screening protocols, Plaintiffs and the Class onto the likely infested ship and negligently chose not to notify Plaintiffs and the Class of:  the actual risk that the ship was infested with COVID-19 due to prior passengers' infections; the actual and extreme risks of contracting COVID-19 while using facilities on the vessel; and/or the actual and extreme risks of contracting COVID-19 while mingling with passengers and crew who had traveled on the Mexico voyage.

152.   Additionally, Defendants breached their duties to Plaintiffs and the Class when, on or before February 25, 2020, Defendants repeatedly failed to notify passengers aboard the M/V GRAND PRINCESS during the San Francisco-Hawaii voyage that passengers on the Mexico voyage had been diagnosed with COVID-19, that one had died, and that certain passengers and crew from that trip remained onboard the M/V GRAND PRINCESS.

153.   If Defendants had adequately informed Plaintiffs and the Class prior to boarding, or at any other time, of the relevant information in Defendants' possession, including facts regarding the M/V GRAND PRINCESS, its prior passengers, continuing passengers and crew, lack of adequate screening, lack of adequate disinfecting procedures, lack of adequate quarantining procedures, and the actual risk of exposure, Plaintiffs and the Class could have made informed decisions about their health and their families' health, including disembarking from or not boarding the vessel.

FIRST AMENDED COMPLAINT
No. 2:20-cv-04203

154.   Defendants repeatedly breached their duties to Plaintiffs and the Class when, throughout the San Francisco-Hawaii voyage, with the aforementioned knowledge, they repeatedly chose not to inform Plaintiffs of the continuing and growing risks of contracting COVID-19, and chose not to provide Plaintiffs with the informed option to disembark at one of the vessel's ports of call.

155.   Finally, Defendants continued to breach their duties to Plaintiffs and the Class when, throughout the duration of the M/V GRAND PRINCESS's San Francisco-Hawaii voyage, with the aforementioned knowledge and without any warning to Plaintiffs and the Class, they, *inter alia*, chose not to implement quarantine or social distancing protocols; chose to continue operating large, public gatherings and meals; chose to continue to operate daily turndown service; and chose to continue hosting communal activities.

156.   As a direct and proximate result of Defendants' failure to safeguard Plaintiffs and the Class, Plaintiffs and the Class were at actual risk of immediate physical injury.

157.   As a direct and proximate result of Defendants' breach of their duties of care, Plaintiff NANCY ALVIS became infected with and ill from COVID-19.

158.   As a direct and proximate result of Defendants' breach of their duties of care, Plaintiff PAMELA GIUSTI became infected and was diagnosed and treated for COVID-19 in an intensive care unit at Kaiser Permanente Medical Center.

159.   As a direct and proximate result of the aforementioned negligence of Defendants in exposing them to actual risk of immediate physical injury, Plaintiffs and the Class have suffered physical injury, emotional distress of the nature and type that reasonable persons would suffer under the circumstances alleged in this Complaint, including, but not limited to, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame. They were traumatized by the fear of developing COVID-19. They were confined on an infected vessel in isolation and then were confined at Travis Air Force Base for two

weeks. It is expected that they will continue to suffer and will, in the future, require medical services not of a kind generally anticipated as part of the effects of daily life.

## SECOND CAUSE OF ACTION
## GROSS NEGLIGENCE AGAINST ALL DEFENDANTS

160.  Plaintiffs re-allege all allegations in all preceding paragraphs as if alleged fully herein.

161.  Defendants owed duties to Plaintiffs and the Class to:  safeguard against and mitigate the risks of passenger injury and illness; appropriately disinfect and sanitize the M/V GRAND PRINCESS, in light of the circumstances of a global pandemic; notify Plaintiffs and the Class of the actual and especially high risk of contracting COVID-19 aboard the M/V GRAND PRINCESS; disembark passengers and crew members who had likely come into contact with individuals infected with COVID-19;and implement medical screening and examination protocols for crew and passengers.

162.  Defendants knew of the unreasonably high risk of viral contagion of COVID-19 on cruise ships, and Defendants knew that it was especially dangerous to expose Plaintiffs and the rest of the Class to COVID-19 in light of the situation on the DIAMOND PRINCESS off the coast of Japan only 3 weeks prior.

163.  Defendants' conduct in deciding to continue to operate the M/V GRAND PRINCESS with Plaintiffs and the Class aboard, even with the aforementioned knowledge, demonstrates an intentional failure to do what a reasonably careful cruise ship owner and operator would do under the circumstances, exhibits a willful and conscious disregard for the safety of Plaintiffs and the Class, and evidences recklessness and indifference by Defendants, which constitutes gross negligence.

164.  Defendants' failure to abide by the guidelines issued on February 3, 2020, by not disembarking, on February 21, 2020, passengers known to have been

in casual contact with individuals who reported COVID-19 symptoms constitutes a failure to provide even a modicum of care to Plaintiffs and the Class. Furthermore, the continued and repeated choice not to quarantine or otherwise shelter in their cabins the passengers and crew members who traveled on the San Francisco-Mexico voyage demonstrates a willful and conscious disregard for the rights and safety of others and amounts to an extreme departure of what a reasonably careful cruise ship owner and operator would do.

165.   Defendants' choice not to warn Plaintiffs and the Class of their actual risk of harm in being exposed to COVID-19, either prior to boarding or while they were already on board, in light of the prior passenger who came down with symptoms and later died, along with others from that prior voyage that exhibited symptoms, and the crew member who disembarked during this voyage due to COVID-19-related illness, constitutes a failure to provide even a modicum of care to Plaintiffs and the Class. The continued and repeated choice not to provide passengers with notice of the actual risks facing them demonstrates a willful and conscious disregard for the rights and safety of others and amounts to an extreme departure of what a reasonably careful cruise ship owner and/or operator would do.

166.   Moreover, Defendants' behavior demonstrated a willful and conscious disregard for the rights and safety of others, and an extreme departure of what a reasonably careful cruise ship owner and/or operator would do in their continued and repeated choices to:  not effectively sanitize and disinfect the M/V GRAND PRINCESS, either before or during the San Francisco-Hawaii voyage; not institute medical screening and examinations for passengers and crew members; host large social gatherings and meals; conduct daily turn-down service; and not implement quarantine or social distance protocols until March 5, 2020. These decisions manifest Defendants' utter failure to provide even a modicum of care to Plaintiffs and the Class.

167.   Defendants chose to place profits over people, including the safety of their passengers, crew, and the general public in continuing to operate business as usual, despite their knowledge of the actual—potentially lethal—risk to Plaintiffs and the Class.

168.   As a direct and proximate result of Defendants' conduct, Plaintiffs were placed at actual, continual risk of immediate, and potentially fatal, physical injury.

169.   Indeed, as a direct and proximate result of Defendants' extreme departure from the ordinary standard of care and their failure to meet their duties of care to Plaintiffs and the Class by providing even scant care, Plaintiff NANCY ALVIS became infected with and ill from COVID-19.

170.   As a direct and proximate result of Defendants' breach of their duties of care, Plaintiff PAMELA GIUSTI became infected with and was diagnosed and treated for COVID-19 in an intensive care unit at Kaiser Permanente Medical Center.

171.   Finally, as a direct and proximate result of Defendants' gross negligence in exposing Plaintiffs and the Class to actual risk of immediate physical injury, Plaintiffs and the Class have suffered emotional distress of the nature and type that reasonable persons would suffer under the circumstances alleged in this Complaint, including, but not limited to, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame. They were traumatized by the fear of developing COVID-19. They were confined on an infected vessel in isolation and then were confined at federal facilities, including Travis Air Force Base, for approximately two weeks. It is expected that they will continue to suffer and will, in the future, require medical services not of a kind generally accepted as a typical part of daily life.

### THIRD CAUSE OF ACTION
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

172.   Plaintiffs re-allege all allegations in all preceding paragraphs as if alleged fully herein.

173.   Defendants knew or should have known of the actual risk of viral contagion of COVID-19 aboard cruise ships, and, in light of the situation on the DIAMOND PRINCESS only 3 weeks prior to the instant voyage on the M/V GRAND PRINCESS, Defendants knew or should have known that it was especially dangerous to expose Plaintiffs and the rest of the Class to COVID-19.

174.   Defendants also knew or should have known that passengers aboard the San Francisco-to-Mexico trip on the M/V GRAND PRINCESS had experienced symptoms of COVID-19 and were eventually diagnosed with COVID-19.

175.   Nevertheless, Defendants chose to board Plaintiffs and the Class onto the M/V GRAND PRINCESS on February 21, 2020 without instituting any procedures for medical screening or examination. Defendants then chose to embark upon the Hawaii-bound voyage, essentially trapping Plaintiffs and the Class on a vessel infested with COVID-19. Throughout the duration of the trip, Defendants continually and repeatedly:  failed to take any effective actions to prevent or mitigate the spread of COVID-19 throughout the crew members and/or passengers; failed to alert passengers to the possibility of infection aboard the ship; hosted and encouraged participation in large group activities and events that Defendants knew could lead to large-scale infection among the crew and passengers.

176.   These choices by Defendants created a dangerous and threatening environment in which Plaintiffs and the Class were forced to live for two weeks, at all times directly at risk of becoming infected with, made ill by, and/or spreading COVID-19.

177.   As the direct and proximate result of Defendants' actions and omissions throughout the duration of their voyage aboard the M/V GRAND

PRINCESS, Plaintiffs and members of the Class were in the "zone of danger," where they were at immediate risk of actual physical harm, including the potential of contracting COVID-19, suffering from the illness—including experiencing shortness of breath, coughing, body aches, fever, and/or any number of yet-to-be-identified future ailments, such as liver damage, kidney failure, or blood clotting—and potentially death as a result of the virus.

178.   Plaintiffs and members of the Class experienced severe psychic injuries, of the nature and type that reasonable persons would suffer under the circumstances alleged in this Complaint, when they were forced to watch first hand as their friends and family members became ill with COVID-19, feared for their own safety and well-being, and continue to fear that they may begin exhibiting symptoms or health complications not yet identified as a result of COVID-19. Plaintiffs suffered physical and emotional injury as the direct and proximate result of Defendants' misconduct.

179.   As a direct and proximate result of Defendants' extreme departure from the ordinary standard of care and their failure to meet their duties of care to Plaintiffs and the Class by providing even scant care, Plaintiff NANCY ALVIS became infected with and ill from COVID-19.

180.   Finally, as a direct and proximate result of Defendants' gross negligence in exposing Plaintiffs and the Class to actual risk of immediate physical injury, Plaintiffs and the Class have suffered emotional distress of the nature and type that reasonable persons would suffer under the circumstances alleged in this Complaint, including, but not limited to, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame related to their own risk of contracting COVID-19 and the suffering they witnessed among their fellow passengers who contracted COVID-19. Plaintiffs and members of the class were traumatized by the fear of their family members, friends and fellow passengers developing COVID-19 and by the threat to their own health of

becoming infected with the virus or suffering future negative health outcomes or complications related to exposure to and / or contraction of the virus.

181.   Plaintiffs and Class members were endangered and harmed by Defendants' actions when they were forced into confinement on an infested vessel. That danger and harm continued when they were confined at federal facilities, including Travis Air Force Base, for approximately two weeks, as a result of the threat of viral outbreak created by Defendants' actions. It is expected that Plaintiffs and the Class will continue to suffer and will, in the future, require medical services not of a kind generally anticipated as a typical part of daily life.

**FOURTH CAUSE OF ACTION**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

182.   Plaintiffs re-allege all allegations in all preceding paragraphs as if alleged fully herein.

183.   Defendants knew or should have known of the actual risk of viral contagion of COVID-19 aboard cruise ships, and, based on their experience with COVID-19 aboard the DIAMOND PRINCESS only 3 weeks prior to the instant voyage on the M/V GRAND PRINCESS, Defendants knew or should have known that it was especially dangerous to expose Plaintiffs and the rest of the Class to COVID-19.

184.   Defendants also knew or should have known that passengers aboard the San Francisco-to-Mexico trip on the M/V GRAND PRINCESS had experienced symptoms of COVID-19 and were eventually diagnosed with COVID-19.

185.   By or before the time of boarding passengers onto the M/V GRAND PRINCESS, on February 21, 2020, Defendants knew or should have known of the extreme risks to health and safety—including the possibility of death—presented by COVID-19.

186.   In light of this knowledge and experience, and particularly given that cruise ships present an especially heightened risk of contagion, Defendants

exhibited extreme and outrageous conduct when, *inter alia*, Defendants boarded Plaintiffs and the Class onto the M/V GRAND PRINCESS on February 21, 2020, for the Hawaii-bound trip without taking any effective measures to medically screen or examine passengers for COVID-19 symptoms.

187.   Defendants additionally acted extremely and outrageously when they chose not to effectively clean, sanitize, sterilize, or disinfect the M/V GRAND PRINCESS in between the Mexico trip and the Hawaii trip. Furthermore, Defendants' decision to allow Plaintiffs and the Class to embark upon a voyage, on an ineffectively sanitized ship, with passengers and crew members who had been exposed to COVID-19 constituted extreme and outrageous conduct.

188.   Defendants' decision to ignore recent protocols and recommendations issued by public health experts and experts in the cruise industry by not disembarking crew members and passengers who had been exposed to COVID-19 on the M/V GRAND PRINCESS's first voyage between San Francisco and Mexico was extreme and outrageous conduct.

189.   Defendants exhibited repeated and continued extreme and outrageous conduct when, during the San Francisco-to-Hawaii voyage upon the M/V GRAND PRINCESS, prior to March 4, 2020, Defendants failed to: alert Plaintiffs to the fact that at least one passenger on the prior voyage had been diagnosed with COVID-19 and had come into contact with passengers and crew members currently on the ship; notify Plaintiffs and the Class about the actual and potential threat of exposure to, infection of, and the possibility of spreading, COVID-19 aboard the ship; failed to advise Plaintiffs and the Class about the possibility and health benefits of disembarking during the trip, at one of the vessel's ports of call.

190.   Defendants continued to behave extremely and outrageously when they:  encouraged Plaintiffs and the Class to continue mingling and participating in large group events and functions throughout the duration of the trip; continued to provide turn down service to passengers despite the fact that over 1,000 crew

members had been exposed to COVID-19 on the Mexico trip; and failed to institute any policies for quarantine, isolation, or social distancing for passengers until March 4, 2020.

191.   As a direct and proximate result of Defendants' intentional and reckless behavior and omissions, Plaintiffs and the Class suffered severe emotional distress and physical harm.

192.   Plaintiffs and the Class were forced to watch as their friends and family members became ill with COVID-19, and, all the while, fear for their own safety and well-being. Plaintiffs suffered physical and emotional injury as the direct and proximate result of Defendants' misconduct, and Plaintiffs continue to suffer from fear and anxiety that they may still begin exhibiting symptoms or experience as-yet-unidentified complications due to their exposure to and potential contraction of COVID-19 while aboard the M/V GRAND PRINCESS.

193.   As a direct and proximate result of Defendants' extreme departure from the ordinary standard of care and their failure to meet their duties of care to Plaintiffs and the Class by providing even scant care, Plaintiff NANCY ALVIS became infected with and ill from COVID-19.

194.   As a direct and proximate result of Defendants' departure from the ordinary standard of care and their failure to meet the duties they owed to Plaintiffs and the Class by providing even scant care, Plaintiff PAMELA GIUSTI became infected, and was diagnosed and treated for COVID-19 in an intensive care unit at Kaiser Permanente Medical Center.

195.   Finally, as a direct and proximate result of Defendants' behavior, which exposed Plaintiffs and the Class to actual risk of immediate physical injury, Plaintiffs and the Class have suffered emotional distress of the nature and type that reasonable persons would suffer under the circumstances alleged in this Complaint, including, but not limited to, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame related to their own risk of

contracting COVID-19 and the suffering they witnessed among their fellow passengers who contracted COVID-19. Plaintiffs and members of the class were traumatized by the fear of their family members, friends and fellow passengers developing COVID-19 and by the past and ongoing threat to their own health of becoming infected with the virus and potentially suffering from as-yet-unidentified negative health outcomes and complications.

196.   Plaintiffs and Class members were endangered and harmed by Defendants' actions when they were forced into confinement on an infected vessel in isolation. That danger and harm continued when they were confined at federal facilities, including Travis Air Force Base, for approximately two weeks, as a result of the threat of viral outbreak created by Defendants' actions. It is expected that Plaintiffs and the Class will continue to suffer and will, in the future, require medical services not of a kind generally accepted as part of the wear and tear of daily life.

197.   Throughout the events described in this Complaint, Defendants repeatedly acted with conscious, callous, and/or reckless disregard for the rights, interests, health and safety of their passengers, such that the imposition of punitive damages, under CA Civil Code Section 3294 and/or all other applicable law, is necessary and appropriate to punish them for their course of conduct, and to deter them and others, and protect the public, from the consequences of similar conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, and all others similarly situated, pray for judgment against Defendants, and each of them, as follows:

1.   An order certifying the proposed Class pursuant to Fed. R. Civ. P. Rule 23(a) and (b)(1), (b)(2), (b)(3) and/or (c)(4), designating Plaintiffs ROBERT ARCHER, MARLENE ARCHER, PAMELA GIUSTI, MICHAEL GIUSTI, VALERIE PASQUINI WILLSEA, MICHAEL R. NEKY, GINA M. PALLOTTA,

1  JOSEPH CLARK, VIOLA CLARK, RAUL PANGILINAN, DENCY

2  PANGILINAN, AMY ROTHMAN, JORDAN BLYNN, JOSEPH BALLIN,

3  VICTORIA BALLIN, DAVID LEANDRES, and DIANNE LEANDRES as named

4  representatives of the Class and designating the undersigned as Class Counsel;

5      2.      An award of damages totaling in excess of Five Million Dollars

6  ($5,000,000.00), inclusive of compensatory damages for Plaintiffs' injuries, including

7  emotional pain and suffering and any other damages allowed by law, in an amount to

8  be proven at trial;

9      3.      An injunction requiring Defendants to: disclose to future passengers the

10  nature and rate of risk of communicable disease upon their cruise ships; implement

11  disinfecting and sanitizing procedures on each of their ships in between and during

12  voyages; implement appropriate social distancing and physical distancing protocols to

13  avoid or reduce the transmission of communicable pathogens; disembark and

14  quarantine passengers when Defendants become aware of a heightened risk of

15  communicable disease aboard a ship; and canceling or discontinuing the operation of

16  cruises when Defendants know or should know of a potential deadly pathogen or

17  similar aboard their ships.

18      4.      An injunction requiring Defendants to provide for the ongoing medical

19  monitoring and diagnostic examinations required to diagnose, prevent, and/or treat

20  current or future injury related to Plaintiffs' and Class Members' exposure to and

21  potential contraction of COVID-19, in light of the evolving scientific understanding

22  of the full risk and scope of health outcomes related to and / or resulting from the

23  virus;

24      5.      An award of attorneys' fees and costs, as allowed by law;

25      6.      An award of pre-judgment and post-judgment interest, as provided by

26  law;

27      7.      Leave to amend this Complaint to conform to the evidence produced at

28  trial; and

8. For such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Respectfully submitted,

Dated: June 2, 2020         NELSON & FRAENKEL LLP

By: */s/ Gretchen M. Nelson*

Gretchen M. Nelson (112566)
gnelson@nflawfirm.com
Carlos F. Llinás Negret (284746)
cllinas@nflawfirm.com
601 So. Figueroa Street, Suite 2050
Los Angeles, CA 90017
Telephone: 213-622-6469
Facsimile: 213-622-6019

Dated: June 2, 2020         MARY ALEXANDER & ASSOCIATES, P.C.

By: */s/ Mary E. Alexander*

Mary E. Alexander, Esq. (SBN 104173)
*malexander@maryalexanderlaw.com*
Brendan D.S. Way, Esq. (SBN 261705)
*bway@maryalexanderlaw.com*
44 Montgomery Street, Suite 1303
San Francisco, California 94104
Telephone: (415) 433-4440
Facsimile: (415) 433-5440

FIRST AMENDED COMPLAINT
No. 2:20-cv-04203

1   Dated:    June 2, 2020              LIEFF CABRASER HEIMANN &
2                                       BERNSTEIN, LLP

3
                                        By:  /s/ Elizabeth J. Cabraser
4
                                        Elizabeth J. Cabraser (SBN 083151)
5                                       ecabraser@lchb.com
                                        Jonathan D. Selbin (SBN 170222)
6                                       jselbin@lchb.com
                                        275 Battery Street, 29th Floor
7                                       San Francisco, CA 94111-3339
                                        Telephone: (415) 956-1000
8                                       Facsimile: (415) 956-1008

9                                       LIEFF CABRASER HEIMANN &
                                        BERNSTEIN, LLP
10                                      Mark P. Chalos (*Pro Hac Vice* forthcoming)
                                        mchalos@lchb.com
11                                      222 2nd Avenue South, Suite 1640
                                        Nashville, TN 37201
12                                      Telephone: (615) 313-9000
                                        Facsimile: (212) 313-9965
13

14  Dated:    June 2, 2020              SAUDER SCHELKOPF LLC

15

16                                      By:  /s/ Joseph G. Sauder

17                                      Joseph G. Sauder (*Pro Hac Vice*
                                        forthcoming)
18                                      jgs@sstriallawyers.com
                                        1109 Lancaster Avenue
19                                      Berwyn, PA 19312
                                        Telephone: (888) 711-9975
20                                      Facsimile: (610) 421-1326

21
                                        *Attorneys for Plaintiffs*
22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT
No. 2:20-cv-04203

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I, Elizabeth J. Cabraser, hereby certify that on June 2, 2020, I caused to be electronically filed **FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES** with the Clerk of the United States District Court for the Central District of California using the CM/ECF system, which shall send electronic notification to all counsel of record.

*/s/ Elizabeth J. Cabraser*
Elizabeth J. Cabraser

FIRST AMENDED COMPLAINT
No. 2:20-cv-04203