1  MARY E. ALEXANDER, ESQ. (SBN: 104173)
   Mary Alexander & Associates, P.C.
2  44 Montgomery Street, Suite 1303
   San Francisco, California 94104
3  Telephone: (415) 433-4440
   Facsimile: (415) 433-5440
4  Email: malexander@maryalexanderlaw.com

5  ELIZABETH J. CABRASER (SBN: 083151)
   Lieff Cabraser Heimann & Bernstein, LLP
6  275 Battery Street, 29th Floor
   San Francisco, CA 94111-3339
7  Telephone: (415) 956-1000
   Facsimile: (415) 956-1008
8  Email: ecabraser@lchb.com

9  GRETCHEN NELSON (SBN: 112566)
   Nelson & Fraenkel LLP
10 601 So. Figueroa Street, Suite 2050
   Los Angeles, CA 90017
11 Telephone: (213) 622-6469
   Facsimile: (213) 622-6019
12 Email: gnelson@nflawfirm.com

13 *Attorneys for Plaintiffs*
   [Additional counsel on signature page]
14
                    UNITED STATES DISTRICT COURT
15       CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

16 ROBERT ARCHER, MARLENE          Case No. 2:20-cv-04203-RGK-SK
   ARCHER, PAMELA GIUSTI,          CLASS ACTION
17 MICHAEL GIUSTI, VALERIE
   WILLSEA, MICHAEL NEKY,          **PLAINTIFFS' MEMORANDUM**
18 GINA PALLOTTA, JOSEPH           **AND POINTS OF AUTHORITIES IN**
   CLARK, VIOLA CLARK, RAUL        **SUPPORT OF MOTION FOR**
19 PANGILINAN, DENCY               **CLASS CERTIFICATION AND**
   PANGILINAN, AMY ROTHMAN,        **APPOINTMENT OF CLASS**
20 JORDAN BLYNN, JOSEPH            **REPRESENTATIVES AND CLASS**
   BALLIN, VICTORIA BALLIN,        **COUNSEL**
21 DAVID LEANDRES, DIANNE
   LEANDRES, JACQUELINE            Date: September 28, 2020
22 GRAHAM, ROBERT GRAHAM,          Time: 9:00 a.m.
   on behalf of themselves and all Judge: Hon. R. Gary Klausner
23 others similarly situated,      Courtroom: 850

24            Plaintiffs,          Magistrate: Hon. Steve Kim
                                   Filed: August 31, 2020
25     v.

26 CARNIVAL CORPORATION;
   CARNIVAL PLC and PRINCESS
27 CRUISE LINES LTD.,

            Defendants.
28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ............................... 3

LEGAL STANDARD .......................................................................... 6

ARGUMENT ...................................................................................... 8

I.     This Class Meets the Requirements for  Rule 23(b)(3) Certification. ......... 10

     A.    The Proposed Class is Definite and Ascertainable. ........................... 10

     B.    The Proposed Class Satisfies the Requirements of Rule 23(a) ........... 10

          1.    The Class Is Sufficiently Numerous. ...................................... 10

          2.    There Are Questions of Law and Fact Common to the Class. ..................................................................................... 11

          3.    Plaintiffs' Claims are Typical of the Class. .............................. 13

          4.    Plaintiffs and their Counsel will Adequately Represent the Class. .................................................................................... 14

     C.    The Proposed Class Satisfies Rule 23(b)(3). .................................... 15

          1.    Common Issues Predominate. ................................................ 15

          2.    A Class Action is the Superior Procedure for Managing this Case. ............................................................................... 18

II.    Class Certification Under Rule 23(c)(4) is Also Appropriate ...................... 19

III.   Rule 42 Joinder Is Another Available Case Management Alternative. ........ 20

CONCLUSION ................................................................................. 20

PLAINTIFFS' MEMO & POINTS OF AUTHORITIES ISO MOTION
FOR CLASS CERT & APPT OF CLASS REP & CLASS COUNSEL
CASE NO. 2:20-CV-04203

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Alfred v. Pepperidge Farm, Inc.*,
    322 F.R.D. 519 (C.D. Cal. 2017)........................................................................8

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997).................................................................15, 16, 18

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
    568 U.S. 455 (2013)................................................................passim

*Andrews v. Plains All Am. Pipeline, L.P.*,
    No. CV 15-4113 PSG (JEMx),
    2020 WL 3105425 (C.D. Cal. Jan. 16, 2020).........................16, 17

*Bateman v. Am. Multi-Cinema, Inc.*,
    623 F.3d 708 (9th Cir. 2010) .............................................................8

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017) .....................................................16, 19

*Butler v. Sears Roebuck & Co.*,
    727 F.3d 796 (7th Cir. 2013) .................................................8, 13, 19, 20

*Campbell v. City of Los Angeles*,
    903 F.3d 1090 (9th Cir. 2018) .........................................................20

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) .......................................................11, 13

*Estate of Diaz v. City of Anaheim*,
    840 F.3d 592 (9th Cir. 2016) ..........................................................20

*Evon v. Law Offices of Sidney Mickell*,
    688 F.3d 1015 (9th Cir. 2012) .........................................................14

*Exxon Shipping Co. v. Baker*,
    554 U.S. 571 (2008).........................................................................16

*Gaudin v. Saxon Mortgage Servs., Inc.*,
    297 F.R.D. 417 (N.D. Cal. 2013)....................................................11

*Guido v. L'Oreal, USA, Inc.*,
    Nos. CV 11-1067 CAS, 1105465 CAS, 2013 WL 3353857
    (C.D. Cal. July 1, 2013) ..................................................................10

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ...........................................................13

*In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014),
    *cert denied*, 135 S. Ct. 754 (2014).................................................17

*In re Live Concert Antitrust Litig.*,
    247 F.R.D. 98 (C.D. Cal. 2007)........................................................9

*In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico,
    on Apr. 20, 2010,*
    910 F. Supp. 2d 891 (E.D. La. 2012).........................................17, 18

1
2

**TABLE OF AUTHORITIES**
**(continued)**

Page

3

*In re USC Student Health Center Litig.*,
   No. 2:18-cv-04258-SVW, Dkt. No. 172 (slip op.) (C.D. Cal. July 12, 2019) ..... 16

4

*Jimenez v. Allstate Ins. Co.*,
   765 F.3d 1161 (9th Cir. 2014) ................................................................. 8

5

*Martin v. Behr Dayton Thermal Prod. LLC*,
   896 F.3d 405 (6th Cir. 2018),
   *cert. denied*, 139 S. Ct. 1319, 203 L. Ed. 2d 564 (2019) ...................................... 19

6
7

*Mejdrech v. Met-Coil Sys. Corp.*,
   319 F.3d 910 (7th Cir. 2003) ................................................................. 19

8

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014) ................................................................. 6

9

*Peterson v. Costco Wholesale Co., Inc.*,
   312 F.R.D. 565 (C.D. Cal. 2016) ......................................................... 16, 17

10
11

*Peterson v. Costco Wholesale Co., Inc.*,
   No. SA CV 13-1292-DOC (JCGx), 2016 WL 6768911
   (C.D. Cal. Nov. 5, 2016) ...................................................................... 17

12
13

*Pulaski v. Middleman, LLC v. Google, Inc.*,
   802 F.3d 979 (9th Cir. 2015) ................................................................. 7

14

*Rannis v. Recchia*,
   380 Fed. App'x 646 (9th Cir. 2010) ...................................................... 10

15

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010) ............................................................................... 9

16
17

*Slaven v. BP Am., Inc.*,
   190 F.R.D. 649 (C.D. Cal. 2000) .......................................................... 10

18

*Spann v. J.C. Penney Corp.*,
   307 F.R.D. 508 (C.D. Cal. 2015) ............................................................ 8

19

*Stockwell v. City & Cty. of San Francisco*,
   749 F.3d 1107 (9th Cir. 2014) ............................................................... 11

20

*Tait v. BSH Home Appliances Corp.*,
   289 F.R.D. 466 (C.D. Cal. 2012) .......................................................... 10

21
22

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,
   308 F.R.D. 630 (N.D. Cal. 2015) .......................................................... 19

23

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) .............................................................. 15, 16, 18

24
25

*Valentino v. Carter–Wallace, Inc.*,
   97 F.3d 1227 (9th Cir.1996) .................................................................. 19

26

*Wal-Mart Stores, Inc. v. Dukes et al.*,
   564 U.S. 338 (2011) ................................................................. 2, 6, 7, 11

27

*Wehner v. Syntex Corp.*,
   117 F.R.D. 641 (N.D. Cal. 1987) ............................................................ 3

28

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Wolin v. Jaguar Land Rover N. Am.*,
   617 F.3d 1168 (9th Cir. 2010) ........................................................................ 13, 16

*Yokoyama v. Midland Nat. Life Ins. Co.*,
   594 F.3d 1087 (9th Cir. 2010) ................................................................................ 16

**Rules**

Fed. R. Civ. P. 1 ................................................................................................ 2, 9, 19
Fed. R. Civ. P. 23(b)(3) ........................................................................................ 2, 15
Fed. R. Civ. P. 23(c)(4) ........................................................................................ 7, 19
Fed. R. Civ. P. 23(d)(1)(A) .......................................................................................... 2
Fed. R. Civ. P. 23(g) .................................................................................................. 15
Fed. R. Civ. P. 23(g)(1)(A) ........................................................................................ 14
Fed. R. Civ. P. 42 ..................................................................................... 3, 7, 8, 20
Fed. R. Civ. P. 42(a) .................................................................................................... 7
Fed. R. Civ. P. 42(b) .................................................................................................. 20
Fed. R. Civ. P. 49 ...................................................................................................... 20

**Other Authorities**

4 Newburg on Class Actions, S. 11:7, at 24 (5th ed. 2014) ........................................ 9
Wright et al., Fed. Prac. & Proc. § 1790 .................................................................... 20

1

**INTRODUCTION**

2      Plaintiffs move for class treatment of this case because it arises from the

3   common experience of more than 2,400 passengers trapped onboard the same

4   cruise ship served by the same crew members, and who, over the same series of

5   days during the same cruise itinerary, uniformly experienced the same misconduct

6   by Defendants.  All were exposed to the potentially-lethal COVID-19 virus as a

7   result of Defendants' failure to protect or warn passengers aboard Defendants'

8   Motor Vessel Grand Princess.  Every member of the proposed Class placed their

9   safety in Defendants' hands.  Defendants assured all passengers that their health

10  and safety were Defendants' top priorities.  Defendants acted in direct

11  contravention of these assurances.  Despite their knowledge of the extreme risks

12  facing their passengers—based on prior experiences with deadly COVID-19

13  outbreaks and specific advisories from medical experts—Defendants loaded

14  Plaintiffs and the Class onto a vessel that Defendants knew was contaminated with

15  COVID-19, among passengers and crew members who had already been exposed

16  to—and were likely carrying—COVID-19.  Defendants effectively trapped Class

17  members on the Grand Princess for weeks, without warning them of the risks of

18  contracting and spreading COVID-19, without providing appropriate personal

19  protective equipment ("PPE"), and without taking other effective measures to

20  prevent the spread of the virus.

21      As a result, Plaintiffs and Class members suffered and continue to suffer

22  physical injury from exposure to COVID-19 with attendant emotional distress,

23  anxiety, and mental anguish.  Scientific understanding of the physical impact of

24  COVID-19 continues to evolve.  As researchers and physicians examine more

25  patients and further study the virus' effects, they have learned that exposure to

26  COVID-19 can cause long-lasting damage to the heart, kidneys, liver, and nervous

27  system.  Improved diagnostic testing suggests that positive COVID-19 cases can

28  appear "asymptomatic" and still result in long-term damage.  Thus, those exposed

1    to COVID-19, particularly in high viral load concentrations for long periods of
2    time, such as on a cruise, require careful, long-term monitoring to ensure their
3    continued health.  That monitoring is the focus of the class aspect of this case.

4         At this stage, the Court need "not [] adjudicate the case; rather, [the Court
5    must] select the method best suited to adjudication of the controversy fairly and
6    efficiently."  *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460
7    (2013) (internal quotation marks and brackets omitted).  Defendants would have
8    each of these thousands of passengers bring separate, individual lawsuits to secure
9    relief for the harms they experienced, even though the relevant facts about
10   Defendants' behavior are identical for each one of them.  That method of litigation
11   would not serve the proposed Class members, the Court, or the goals of the Federal
12   Rules of Civil Procedure, which aim to provide for the "just, speedy, and
13   inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1, and
14   direct courts to select the method best suited to "fairly and efficiently adjudicating
15   the controversy."  Fed. R. Civ. P. 23(b)(3); *see also* Fed. R. Civ. P. 23(d)(1)(A)
16   (court may "prescribe measures to prevent undue repetition or complication in
17   presenting evidence or argument.").

18        Individual litigation would require the Court to hear potentially thousands of
19   cases that raise the same questions of law and fact.  It would require passengers
20   harmed by Defendants' conduct to wait for many years, while one case after
21   another sought to prove the same misconduct over and again.  This delay and
22   redundancy are unnecessary, impractical, and incompatible with the Federal Rules.

23        A Rule 23 class action is a superior mechanism to resolve the issues in this
24   case, and the proposed Class is well-suited for certification under Rule 23(b)(3).
25   The answers to the common questions regarding Defendants' liability will be the
26   same for all class members.  *Wal-Mart Stores, Inc. v. Dukes et al.*, 564 U.S. 338,
27   350 (2011) (recognizing that proceeding's ability to "generate common answers" is
28   "what matters").  Particular issues, such as the common liability issues, are also

1  sufficiently significant to warrant Rule 23(c)(4) treatment. Alternatively, if this

2  Court does not deem a Rule 23 class appropriate here, Rule 42 consolidation offers

3  yet another mechanism for conducting litigation in an aggregate—and more just,

4  speedy and inexpensive—manner than repetitive individual suits. *See*, *e.g.*, *Wehner*

5  *v. Syntex Corp.*, 117 F.R.D. 641, 645 (N.D. Cal. 1987) (recognizing that

6  "[s]ignificant judicial economies are served by trying the common issues").

7  ## FACTUAL AND PROCEDURAL BACKGROUND

8         On February 21, 2020, Defendants Princess and Carnival boarded over 2,400

9  passengers onto the Grand Princess for a 10-day roundtrip cruise from San

10  Francisco to Hawaii (the "Hawaii trip").  SAC ¶¶ 140, 223.[1]  Unbeknownst to

11  Plaintiffs—but known by Defendants—passengers and crew members who traveled

12  on the Grand Princess's immediately-preceding cruise, which disembarked the

13  same day Plaintiffs boarded, suffered from COVID-19 while onboard.

14  SAC ¶¶ 134-35, 139, 145, 152.  Some of those passengers, and all or nearly all of

15  the crew members, remained onboard for the Hawaii trip.  SAC ¶¶ 137.  Thus, for

16  the full duration of their cruise Plaintiffs were exposed to COVID-19 by

17  continuously being in close proximity to passengers and crew members, breathing

18  the same air, and by touching shared surfaces—for example, buffet utensils and

19  elevator buttons.  SAC ¶¶ 97-98, 121-22, 157, 168, 202.

20         In addition to knowing that passengers and crew members had suffered from

21  COVID-19 symptoms during the cruise immediately preceding the Hawaii trip,

22  Defendants knew that COVID-19 posed a grave risk to their passengers, that

23  contamination on other ships Defendants owned and operated could lead (and had

24  led) to a COVID-19 outbreak, and that cruise ships, in particular, are susceptible to

25  viral outbreaks.  SAC ¶¶ 132-39, 112, 114-18, 119-25; *see also* Exhibit 1, Timeline

26  Summarizing Complaint Allegations.  *First*, Defendants knew that COVID-19

27  ────────────────

28  [1] All citations to "SAC" refer to Plaintiffs' Second Amended Complaint, Dkt.
No. 58.

PLAINTIFFS' MEMO & POINTS OF AUTHORITIES ISO MOTION
FOR CLASS CERT & APPT OF CLASS REP & CLASS COUNSEL
CASE NO. 2:20-CV-04203

1   posed a grave health risk because nearly a month before Class members embarked
2   on this cruise, the World Health Organization declared a global health emergency
3   related to the rapid spread of the virus and experts in the European Union issued
4   cruise-industry-specific guidelines.  SAC ¶¶ 89, 90, 112.  *Second*, Defendants knew
5   the dangers an outbreak posed to their passengers based on first-hand experience on
6   their cruise ship the Diamond Princess.  SAC ¶¶ 112, 114-18.  On the Diamond
7   Princess, over 700 passengers became infected with COVID-19, and at least two
8   died before February 19, 2020—two days before the Hawaii trip boarded onto the
9   Grand Princess.  SAC ¶¶ 114-16.  Another of Defendants' ships, the Ruby Princess,
10  is linked to *over six hundred* cases throughout Australia.  SAC ¶¶ 117.  *Third*,
11  Defendants knew that cruise ships are particularly susceptible to viral outbreaks of
12  airborne illnesses, and that cruise ships' unique characteristics render them
13  especially dangerous in such circumstances.  SAC ¶¶ 120-25.  As described in a
14  2017 research paper co-authored by Defendants' Chief Medical Officer Grant
15  Tarling, these characteristics include "close quarters and prolonged contact among
16  travelers."  SAC ¶¶ 125.  That same paper acknowledged that outbreaks on cruise
17  ships can impact the health of the general public because "[i]ll travelers represent a
18  potential source for introduction of novel or antigenically drifted influenza virus
19  strains to the United States."  SAC ¶ 125.  The paper noted "the need to have robust
20  influenza prevention and control activities on cruise ships."

21       Despite this knowledge, Defendants chose not to cancel the February 21,
22  2020 trip.  SAC ¶¶ 140, 227.  Nor did Defendants take any reasonable steps to
23  prevent or mitigate the spread of COVID-19 onboard the Grand Princess before or
24  during that trip, at least until March 4, 2020.  SAC ¶¶ 138-39, 141, 144-45, 147.
25  Instead, Defendants boarded the proposed Class members without conducting any
26  effective medical screenings—they asked, merely, whether passengers felt ill or had
27  recently traveled to China.  SAC ¶¶ 133, 137, 141; Exhibits 2 through 11. [2]

28

[2] Exhibits 2 through 11 are Declarations from Class Representatives Robert Archer,

Defendants continued to encourage passengers to attend dinners and other social events.  SAC ¶¶ 149-50.  Defendants did not increase sanitary procedures—even to disinfect adequately the vessel between cruises—on the ship until March 3, 2020.  SAC ¶¶ 138, 144.  Defendants did not require crew members or passengers to wear masks.  SAC ¶¶ 147.  Defendants did not institute quarantine or social distancing measures until March 5, 2020.  SAC ¶¶ 147.  Defendants did not warn or otherwise alert passengers about the ship's contamination, the crew members' exposure and/or illnesses, or that some of their fellow passengers had been exposed, and may have been ill with, COVID-19.  SAC ¶¶ 139, 142, 145.

If Plaintiffs and the Class had known they were going to be directly exposed to COVID-19, they would not have boarded the ship or would have disembarked at one of the ports of call en-route.  SAC ¶ 157.  Defendants deliberately chose not to inform the Hawaii trip passengers of any potential risk until March 4, 2020, when passengers received a letter from Chief Medical Officer Grant Tarling under their door informing them that a passenger from the immediately-preceding cruise had died.  SAC ¶¶ 145-48, 152.  Not until after that evening's "formal night" event were passengers asked to shelter in their cabins.  SAC ¶ 149.  On March 5, because of the outbreak onboard the Grand Princess, the State of California denied the ship entry into the Port of San Francisco.  SAC ¶ 152.  Passengers remained onboard, quarantined to their cabins, for approximately 5 days until, finally, the ship was allowed to dock.  SAC ¶ 154-55.  After the passengers disembarked, most were taken to U.S. military bases for another, 14-day quarantine.  SAC ¶ 155.

Defendants' decision to operate the Hawaii trip, despite specific advisories from global health organizations detailing the risks, their experiences with outbreaks of deadly pathogens on other vessels, and their knowledge that passengers and crew members had been ill on the immediately preceding trip,

Pamela Giusti, Valerie Pasquini Willsea, Michael Neky, Raul Pangilinan, Amy Rothman, Jordan Blynn Joseph Ballin, David Leandres, and Robert Graham in support of Class Certification.

1    exposed the Class to COVID-19.  SAC ¶ 168.  Further, Defendants' refusal to take

2    any of the above-listed—or alternative, reasonable—protective measures not only

3    failed to contain the spread of the virus, but likely exacerbated it, thereby increasing

4    the risk and harm to the Class.  SAC ¶ 215.

5         As a result of Defendants' misconduct, Plaintiffs suffered physical harms due

6    to becoming ill with COVID-19, along with severe mental and emotional distress,

7    including anxiety, fear, and anguish.  SAC ¶¶ 168-206.  Some of the proposed Class

8    members have still not yet fully recovered.  SAC ¶¶ 190, 194, 198.  And, as

9    ongoing medical research suggests, those who appear to have recovered may

10   continue to experience damage to and deterioration of their health, including

11   experiencing strokes, blood clots, and heart and respiratory conditions, which will

12   require ongoing care and monitoring.  SAC ¶¶ 104-09.

13        Plaintiffs are filing this motion in compliance with the Court's Standing

14   Order Regarding Newly Assigned Cases. Plaintiffs have not yet been permitted to

15   conduct discovery in this case because there has not yet been a Rule 26(f)

16   conference and no scheduling order has been issued by the Court.  Nevertheless, the

17   evidence in the record, in the form of declarations from the Class Representatives

18   attached hereto as Exhibits 2 to 11, is sufficient to support this motion.

19   Furthermore, once discovery can be undertaken, Plaintiffs and the Court will have

20   the benefit of additional evidence to enable the Court to perform the "rigorous

21   analysis" required of it when considering class certification.  *See Wal-Mart Stores,*

22   *Inc. v. Dukes et al.*, 564 U.S. 338, 351 n.6 (2011).  Plaintiffs respectfully submit

23   that it is in the interests of justice and in keeping with the purposes of the Federal

24   Rules to allow Plaintiffs to conduct discovery and renew this motion once it has

25   been performed.

26                              **LEGAL STANDARD**

27        This Court has broad discretion to grant class certification.  *See Parsons v.*

28   *Ryan*, 754 F.3d 657, 673 (9th Cir. 2014).  When assessing whether Plaintiffs have

met the Rule 23 requirements, the court must conduct a "rigorous analysis." *Dukes*, 564 U.S. at 351 n.6.  Rule 23, however, provides the court "no license to engage in free-ranging merits inquiries at the class certification stage." *Amgen*, 568 U.S. at 466.  Rather, the court may consider merits questions "only to the extent … that they are relevant to determining whether" plaintiffs have satisfied the Rule 23 prerequisites.  *Id.*  The purpose of class certification is "not to adjudicate the case; rather, it is to select the method best suited to adjudication of the controversy fairly and efficiently."  *Id.* at 460 (internal quotation marks and brackets omitted).  Where the plaintiffs' claims raise common questions, as in this case, some form of common adjudication is superior to individual treatment.

Plaintiffs must demonstrate that they meet the enumerated prerequisites of Rule 23(a) and at least one prong of Rule 23(b), or (c)(4).  *See Pulaski v. Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 985 (9th Cir. 2015).  Rule 23(b)(3) requires that common questions of law and fact predominate over questions affecting only individual class members, and that a class action is "superior to other available methods for adjudicating the controversy."  *Id.*  Rule 23(c)(4) provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues."  Fed. R. Civ. P. 23(c)(4).  Alternatively, should the Court decide that direct joinder, rather than representative joinder, in a consolidated action is superior, Rule 42(a) provides that "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay."  Plaintiffs respectfully proffer these procedural options in ranking order.  Class treatment is the most comprehensive and hence superior mechanism to secure the "just, speedy and inexpensive" determination of the issues in this case; while less protective of class members, Rule 42 consolidation would still advance the goal of fairly and efficiently adjudicating the controversy better than an endless series of repetitive

1  individual suits.

2  <u>**ARGUMENT**</u>

3  "District courts are in the best position to consider the most fair and efficient

4  procedure for conducting any given litigation," and have "wide discretion" to

5  certify a class.  *Bateman v. Am. Multi-Cinema*, *Inc.*, 623 F.3d 708, 712 (9th Cir.

6  2010) (internal quotation marks and citation omitted).  Utilization of Rule 23 (or

7  Rule 42) presents a number of trial structuring alternatives that are superior to the

8  prospect of individualized trials. Aggregate treatment of the common liability

9  questions in a single trial can be accompanied by the complete adjudication of the

10  class representatives' (and/ or other selected plaintiffs') damages and injuries

11  claims, as has been done in other cases, providing "bellwether" determinations that

12  will inform the parties on the value of all claims, aiding resolution. Bifurcated

13  determinations of liability (e.g. in a phase I common questions trial) and follow-on

14  proceedings on damages (phase II), have been approved and adopted by courts,

15  including in this District.  *See*, *e.g.*, *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161,

16  1168 (9th Cir. 2014) (district court's decision to bifurcate proceedings, "preserved

17  both Allstate's due process right to present individualized defenses to damages

18  claims and the plaintiffs' ability to pursue class certification on liability issues

19  based on the common questions"); *Butler v. Sears Roebuck & Co.*, 727 F.3d 796,

20  798 (7th Cir. 2013) (class-wide determination of liability could be followed by

21  individual hearings to determine the damages sustained by each class member.");

22  *Alfred v. Pepperidge Farm, Inc.*, 322 F.R.D. 519, 548, 551-52 (C.D. Cal. 2017)

23  (adopting bifurcated trial plan because "the fact that [issue of whether employees

24  were exempt from overtime pay] may arise supports a trial plan in which this

25  affirmative defense as to individual claims would be bifurcated. Such separate

26  proceedings would be necessary only if Plaintiff prevails on liability."); *Spann v.*

27  *J.C. Penney Corp.*, 307 F.R.D. 508, 532-33 (C.D. Cal. 2015) ("a case may be

28  bifurcated with common issues of liability tried before damages and damages tried

- 8 -

1    using common evidence, if applicable, or individualized evidence, as bifurcating

2    courts often do.") (quoting 4 Newburg on Class Actions, S. 11:7, at 24 (5th ed.

3    2014)); *In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 149 (C.D. Cal. 2007)

4    ("the Court observes no reason why the issues of liability and damages could not be

5    bifurcated for the purposes of summary judgment or trial.").

6         As a threshold matter, Plaintiffs acknowledge that Defendants have, in their

7    motions to dismiss filed August 24, 2020, asserted that the uniform Passage

8    Contract (provided to passengers after they registered for the cruise) precludes a

9    class action in this case. *See* Dkt. Nos. 61, 62. That contract is unconscionable,

10   contrary to public policy, and unenforceable.[3] As the proposed Class

11   Representatives explain in declarations attached hereto, the Passage Contract was

12   *not* made available to passengers for review prior to purchasing tickets for the

13   cruise. In fact, the Class Representatives did not know about the contract, including

14   its class waiver provision, until *after* they had paid significant sums to secure their

15   place on the cruise. *See* Exhibits 2 through 11. A one-sided contract of adhesion

16   should not constrain this Court's ability, under the Federal Rules, to manage its

17   docket and provide for the fair, efficient adjudication of its cases. Rule 23 "creates

18   a categorical rule entitling a plaintiff whose suit meets the specified criteria to

19   pursue his claim as a class action." *Shady Grove Orthopedic Assocs., P.A. v.*

20   *Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). Thus, notwithstanding the Passage

21   Contract, class treatment is appropriate here. In fact, Defendants' contention that

22

23   [3] Defendants selected this District as their venue of choice in the Passage Contract,
     a document passengers had no real opportunity to review, much less negotiate,

24   before committing to the voyage that is the subject of this case. The Federal Rules
     of Civil Procedure, "which govern the procedures in all civil actions and

25   proceedings" in this court, "should be construed, administered, and enforced by the
     court *and the parties* to secure the just, speedy, and inexpensive determination of

26   every action and proceeding." Fed. R. Civ. P. 1. (emphasis added). A contract that
     purports to dictate the venue, while also purporting to flout the Rules that govern

27   that venue—and that violates Rule 1's duty of cooperation by purporting to
     foreclose or constrain the court's case management discretion through a class action

28   waiver—is inherently unconscionable and unenforceable.

the uniform Passage Contract is applicable to all members of the Class renders the question of the contract's legal effect a predominating common question and its answer applicable to all proposed Class members.

## I.    This Class Meets the Requirements for  Rule 23(b)(3) Certification.

### A.    The Proposed Class is Definite and Ascertainable.

Plaintiffs seek to certify a Rule 23(b)(3) class composed of:

> All persons in the United States who sailed as passengers on the Grand Princess cruise from San Francisco, California, leaving on February 21, 2020, roundtrip to Hawaii.

SAC ¶ 220.  This class is objectively defined, and its members can be readily ascertained from Defendants' records.  *Guido v. L'Oreal, USA, Inc.*, Nos. CV 11-1067 CAS, 1105465 CAS, 2013 WL 3353857, at *18 (C.D. Cal. July 1, 2013) ("An ascertainable class exists if it can be identified through reference to objective criteria").

### B.    The Proposed Class Satisfies the Requirements of Rule 23(a).

#### 1.    The Class Is Sufficiently Numerous.

Rule 23(a)(1) mandates that a class must be "so numerous that joinder is impracticable."  Courts have held that this numerosity requirement is satisfied when a class exceeds 40 members.  *See Rannis v. Recchia,* 380 Fed. App'x 646, 650 (9th Cir. 2010); *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 473-74 (C.D. Cal. 2012); *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000).  The proposed Class here totals approximately 2,422—the number of passengers who traveled on the Hawaii cruise.  SAC ¶ 223.  Even if every passenger is not a class member, the class still satisfies the numerosity requirement.  This is plainly demonstrated by Plaintiffs' Second Amended Complaint, Dkt. No. 58, including 62 Class members, as well as by more than 50 other passengers with related cases in this Court arising from the same cruise.  *See* Exhibit 12, Other Presently-Filed Lawsuits Involving February 21, 2020 Grand Princess Hawaii Cruise.  Numerosity is met.

**2.      There Are Questions of Law and Fact Common to the Class.**

Rule 23(a)(2) "conditions class certification on demonstrating that members of the proposed class share common 'questions of law or fact.'" *Stockwell v. City & Cty. of San Francisco*, 749 F.3d 1107, 1111 (9th Cir. 2014).  This requirement is construed permissively. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011).  "[E]ven a single question" will suffice. *Dukes*, 564 U.S. at 350.  "What matters to class certification … is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* (internal quotation marks and citation omitted).  Commonality is satisfied where the claims of all class members "depend upon a common contention ... [such] that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*; *see also Amgen*, 568 U.S. at 470.   That is the case here, where common questions abound.

To begin with, a principal matter to be dealt with in this case is the enforceability and effect of the uniform Passage Contract.[4]  This is a quintessential common question.  The Passage Contract is a standardized, form contract of adhesion purportedly presented to each passenger prior to boarding the Grand Princess.  It appeared in the same materials for each proposed Class member, and its terms were identical for each passenger.  If this adhesion contract is unenforceable as to one passenger, it is unenforceable as to each.  In determining its enforceability, "the Court can resolve an issue central to the viability of the Proposed Class Members' claims." *Gaudin v. Saxon Mortgage Servs., Inc.*, 297 F.R.D. 417, 425 (N.D. Cal. 2013) (granting class certification where enforceability of a form contract provided to all class members was a common question).

---

[4] Defendants raise this question in their Motions to Dismiss, Princess Mem. in Supp. of Mot. to Dismiss at 4, Carnival Mem. in Supp. of Mot. to Dismiss at 23, and Plaintiffs address the issue in opposition to Princess's Motion.  Plaintiffs' opposition was filed concurrently with this motion at Docket No. 67.

1    Importantly, the final merits determination on this question is not at issue at this

2    stage—the parties should first be permitted to conduct relevant discovery on that

3    issue and others; at the class certification stage, it is enough that a threshold

4    question of law and fact is common to all proposed Class members.

5         Beyond this threshold matter, this case centers on Defendants' misconduct

6    uniformly experienced by the entirety of the Class, raising common issues of fact

7    and law.  The common facts underlying each of Plaintiffs' claims are rooted in

8    Defendants' misconduct in preparation for the Hawaii trip on the Grand Princess:

9    their decision to operate the cruise; their mismanagement of the passengers in light

10   of their knowledge that the Grand Princess was infected with COVID-19; their

11   knowledge that crew members had been exposed to the virus; and the course of

12   events onboard the Grand Princess once the ship embarked.  Defendants' acts and

13   omissions were applicable to and affected every Class member who traveled on the

14   Grand Princess.

15        Other common factual questions that arise in this case and can be resolved

16   through common information likely to be uncovered through discovery include:

17        • Whether and to what extent Defendants knew the risks of COVID-19;

18        • What procedures or measures Defendants considered taking and/or did
             take to prevent or mitigate the risk of COVID-19 exposure before

19           boarding Class members onto the ship;

20        • Whether and when Defendants learned that the Grand Princess was
             contaminated with COVID-19 prior to boarding Plaintiffs onto the ship

21           on February 21, 2020;

22        • When Defendants each knew or suspected that passengers and crew
             members onboard the ship had COVID-19 during the Hawaii trip;

23        • Whether Defendants instituted any increased cleaning and disinfecting
             procedures prior to March 3, 2020, and what those procedures

24           included;

25        • Whether Defendants advised crew members that individuals onboard
             had COVID-19, and whether Defendants required crew members to

26           take any additional precautions, and what those precautions were;

27        • Whether Defendants' knowing, reckless or negligent conduct in
             exposing the Class to COVID -19 creates increased risk of ongoing,

28           recurring or future harm, warranting a medical monitoring remedy.

1    The pertinent questions of law in this case are common as well, and point to

2    "central issue[s] of liability." *Butler*, 727 F.3d at 801.  For instance, whether

3    Defendants owed a duty to passengers will be applicable to the whole class.  And

4    whether Defendants' misconduct breached that duty can be resolved in one fell

5    swoop.  The more specific subsidiary questions of law can also be determined on a

6    class-wide basis.

7    Thus, the common issues in this case will be "sufficiently parallel" across the

8    class "to insure a vigorous and full presentation of all claims for relief." *Wolin v.*

9    *Jaguar Land Rover N. Am.*, 617 F.3d 1168, 1172 (9th Cir. 2010) (internal quotation

10    marks omitted).  Plaintiffs amply satisfy the commonality requirement.

11    ### 3.    <u>Plaintiffs' Claims are Typical of the Class.</u>

12    Rule 23(a)(3) requires that the claims of the named Plaintiffs be typical of the

13    claims of the class.  "Typicality refers to the nature of the claim or defense of the

14    class representative, and not to the specific facts from which it arose or the relief

15    sought." *Ellis*, 657 F.3d at 984 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d

16    497, 508 (9th Cir. 1992)).  "The test of typicality is whether other members have

17    the same or similar injury, whether the action is based on conduct which is not

18    unique to the named plaintiffs, and whether other class members have been injured

19    by the same course of conduct." *Wolin*, 617 F.3d at 1175 (internal quotation marks

20    omitted).  The Class Representatives easily meet this requirement.

21    All Class members—including the Class Representatives—boarded the same

22    ship, on the same day, and suffered the same harm. SAC ¶¶ 140157, 224.  They

23    were exposed to COVID-19, for the same length of time while onboard.

24    SAC ¶¶ 119-20.  The Class Representatives, like all members of the proposed

25    Class, were subject to the same (lack of) "screening procedures" before boarding

26    the ship, SAC ¶ 141, received the same March 4, 2020 health advisory,

27    SAC ¶¶ 145-47, and were all forced to remain confined in their rooms until the ship

28    was allowed to dock.  SAC ¶ 153.  The Class Representatives, like other Class

members, were forced to quarantine under the control of the U.S. military after disembarking from the ship.  SAC ¶ 155.  And each of the Class Representatives, like other Class members will require long-term health monitoring due to their exposure to COVID-19 while onboard the Grand Princess.  SAC ¶ 111, 205-6, 224. The Class representatives are typical of the proposed Class members.

### 4. <u>Plaintiffs and their Counsel will Adequately Represent the Class.</u>

Rule 23(a)(4) requires that the class representatives "will fairly and adequately protect the interests of the class."  Representation is adequate when "class representatives do not have conflicts of interest with other class members, and the Court is confident the representatives will prosecute the action vigorously on behalf of the class."  *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012).  Additionally, in evaluating the adequacy of plaintiffs' counsel, the court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).

The Class Representatives have no conflicts of interest with absent Class members, and every interest and intention of prosecuting the case vigorously.  *See* Exhibits 2 to 11.  To date, they each have actively participated in this litigation by providing documents to counsel, and by providing interviews with counsel and declarations about their experience.  They have each chosen to serve as Class Representatives because of their commitment to this litigation and to ensuring that all members of the proposed Class receive appropriate relief.  *See id*.  Moreover, the Class Representatives' claims rise and fall on the same questions and law as those relevant for absent Class members.  All Class members seek damages that, although varying in amount and extent, arise from the same cause, raise the same liability

1    questions, and will be resolved by the same answers regarding Defendants' alleged

2    misconduct.  There is no conflict of interest.

3        The Class Representatives retained highly qualified counsel with extensive

4    experience conducting aggregate and complex litigation, particularly in the realm of

5    torts, mass disasters, and maritime law.  *See* Exhibit 13, Decl. of Elizabeth J.

6    Cabraser in Support of Class Certification and Appointment of Class

7    Representatives and Class Counsel.  Counsel have committed significant resources

8    to developing the claims in this case, are committed to continuing to prosecute this

9    action vigorously, and should be appointed to serve as Class Counsel under Rule

10   23(g).  Fed. R. Civ. P. 23(g); *see also* Exhibit 13.

11       **C.     The Proposed Class Satisfies Rule 23(b)(3).**

12       Rule 23(b)(3) requires that "the questions of law or fact common to class

13   members predominate over any questions affecting only individual members, and

14   that a class action is superior to other available methods for fairly and efficiently

15   adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Courts consider: (A) the

16   class members' interests in individually controlling the prosecution or defense of

17   separate actions; (B) the extent and nature of any litigation concerning the

18   controversy already begun by or against class members; (C) the desirability or

19   undesirability of concentrating the litigation of the claims in the particular forum;

20   and, (D) the likely difficulties in managing a class action.  *Id.*

21       **1.     Common Issues Predominate.**

22       Rule 23(b)(3)'s predominance requirement "tests whether proposed classes

23   are sufficiently cohesive to warrant adjudication by representation."  *Tyson Foods,*

24   *Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citing *Amchem Prods., Inc. v.*

25   *WindsorError! Bookmark not defined.*, 521 U.S. 591, 623 (1997)).  Claimants

26   need not prove that each element of their claim is susceptible to class-wide proof,

27   but only that common questions "*predominate* over any questions affecting only

28   individual [class] members."  *Amgen*, 568 U.S. at 469 (quotations and citations

omitted). If one or more "common, aggregation-enabling, issues in a case are more prevalent or important than the non-common, aggregation-defeating, individual issues," the proposed Class satisfies this prong of Rule 23(b).  *Id.*  This remains true "even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Andrews v. Plains All Am. Pipeline, L.P.*, No. CV 15-4113 PSG (JEMx), 2020 WL 3105425, at *9 (C.D. Cal. Jan. 16, 2020) (quoting *Tyson Foods*, 136 S. Ct. at 1045); *see also Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1131 (9th Cir. 2017) (finding that need to assess individual damages does not preclude class certification); *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) ("damage calculations alone cannot defeat certification.").

The Supreme Court has recognized that mass tort cases "arising from a common cause or disaster" can satisfy the predominance requirement.  *Amchem*, 521 U.S. at 625.  Further, courts frequently certify classes where a litigation centers on a single incident or course of conduct, if the incident or conduct is common to all class members.  *See*, *e.g.*, *Exxon Shipping Co. v. Baker*, 554 U.S. 571 (2008) (discussing classes certified for trial against Exxon for Exxon Valdez oil spill); *Wolin*, 617 F.3d 1168 (9th Cir. 2010) (finding common questions predominated where Defendants sold defective product to all class members); *In re USC Student Health Center Litig.*, No. 2:18-cv-04258-SVW, Dkt. No. 172 (slip op.) (C.D. Cal. July 12, 2019) (approving class action settlement and finding predominance of common question as to whether university failed to protect students by not firing physician accused of sexual abuse); *Andrews*, 2020 WL 3105425, at *11 (denying motion to decertify based on predominance because common questions of law and fact could be answered at once for entire subclass); *Peterson v. Costco Wholesale Co., Inc.*, 312 F.R.D. 565, 579-80 (C.D. Cal. 2016) (certifying class of consumers who ate fruit from single, contaminated batch that allegedly exposed them to hepatitis A); *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on*

1    *Apr. 20, 2010,* 910 F. Supp. 2d 891, 926 (E.D. La. 2012), *aff'd sub nom. In re*

2    *Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014), *cert denied*, 135 S. Ct. 754

3    (2014) (finding predominance satisfied when claims, including toxic exposure,

4    arose from "common legal framework" and "key factual questions" were common).

5            In *Peterson*, this District certified a class of people who consumed fruit

6    linked to an outbreak of hepatitis A.  312 F.R.D. at 584.  In a motion to decertify

7    the class, defendants identified multiple individual questions, including whether

8    each class representative could establish that they had been exposed to hepatitis A

9    and whether each batch of berries the representatives had purchased was

10   contaminated.  *Id.*  The court held that common questions of Defendants' liability

11   predominated and the proposed class was well-suited for certification.  *Id.*; *see also*

12   *Peterson v. Costco Wholesale Co., Inc.*, No. SA CV 13-1292-DOC (JCGx), 2016

13   WL 6768911 (C.D. Cal. Nov. 5, 2016) (denying motion for decertification of class

14   in part because whether "each Plaintiff needs to offer individualized proof of the

15   contamination" was better suited for merits inquiry).

16           *Deepwater Horizon* presents another apt example.  There, the court

17   considered "the blowout of one well, on one date, and the discharge of oil from one

18   location[,]" and determined that specific factual questions about defendant BP's

19   decision-making and conduct were "key" to the litigation such that they were

20   predominant.  910 F. Supp. 2d at 922; *see also Andrews*, 2020 WL 3105425, at *9

21   (certifying subclasses in case related to Santa Barbara oil spill and noting that

22   liability "was not an individual issue").  Among these key factual questions were

23   BP's design of the well that exploded and BP's conduct in containing the oil spill.

24   *Id.*  Put another way, the court was concerned with BP's decisions precipitating the

25   accident and their conduct in trying to control the accident.  Similar critical

26   questions of law and fact predominate in this case, which addresses one cruise, on

27   one ship, over one stretch of time.  Here, as in *Deepwater Horizon*, the questions

28   center on Defendants' decisions in advance of operating the February 21, 2020

1    cruise and on their conduct in response to the outbreak onboard.

2         *When* Defendants became aware of COVID-19 contamination on the Grand

3    Princess is a key fact, as are whether Defendants knew the risks of COVID-19 to

4    passengers and whether Defendants took effective—or any—measures to mitigate

5    the spread of the outbreak before March 4th.  These questions go to the heart of the

6    legal questions presented by the proposed Class, which include—as in *Deepwater*

7    *Horizon*—"whether [Defendants'] decisions (individually or collectively) constitute

8    negligence and gross negligence."  *Id.* at 922.  The claims of the proposed Class

9    will rise and fall on disposition of these questions, which can be decided in one

10   proceeding.  They predominate over any individual questions.  *See Tyson Foods*,

11   136 S. Ct. 1036, 1045 (quoting *Amchem*, 521 U.S. at 623).  The proposed Class

12   meets Rule 23(b)(3)'s predominance prong.

13                **2.    A Class Action is the Superior Procedure for Managing this**
                        **Case.**
14

15        Class members experienced virtually identical circumstances as a result of

16   Defendants' acts and omissions.  A class action is superior to individual litigation.

17   At its core, this is a case of common factual questions—the answers of which will

18   be driven by discovery.  "Relitigating these issues *seriatim* would be a massive

19   waste of judicial resources, as the vast majority of the issues of law and fact ... are

20   common to" thousands of passengers from the Grand Princess.  *Deepwater*

21   *Horizon*, 910 F. Supp. 2d at 923 (internal quotation marks and citation**s** omitted).

22        Furthermore, while the over 100 plaintiffs currently litigating this matter in

23   this Court demonstrates the numerosity of the Class, that these plaintiffs represent

24   only 5% of the passengers onboard the ship demonstrates the superiority of a class

25   action.  Without a representative, aggregate action, thousands of passengers likely

26   will be unable to seek relief because the costs of litigation are far greater than the

27   relief potentially available to most.  Leaving every passenger to litigate on their

28   own would not serve the interests of speedy and fair adjudication of the common

1   questions presented here.  *See*, *e.g.*, Fed. R. Civ. P. 1.

2          A Rule 23(b)(3) class would allow this court to conduct a bifurcated trial,

3   considering, *first*, the common questions of law and fact related to Defendants'

4   liability, and, *second*, the appropriate damages for class Members.  "Rule 23

5   specifically contemplates the need for such individualized claim determinations

6   after a finding of liability."  *Briseno*, 844 F.3d at 1131.

7   **II.     Class Certification Under Rule 23(c)(4) is Also Appropriate.**

8          Alternatively, the Court can adjudicate the key, common liability issues

9   under Rule 23(c)(4).  Most courts, including the Ninth Circuit, have embraced the

10  use of Rule 23(c)(4) issue classes to secure the just, speedy, and inexpensive

11  determination of actions, even where predominance is not satisfied for the cause of

12  action as a whole.  *Martin v. Behr Dayton Thermal Prod. LLC*, 896 F.3d 405, 411-

13  412 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 1319, 203 L. Ed. 2d 564 (2019) ("In

14  addition to the Second and Ninth Circuits, the Fourth and Seventh Circuits have

15  supported this approach;" collecting cases).  "Even if the common questions do not

16  predominate over the individual questions so that class certification of the entire

17  action is warranted, Rule 23[ (c)(4) ] authorizes the district court in appropriate

18  cases to isolate the common issues ... and proceed with class treatment of these

19  particular issues."  *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 308 F.R.D.

20  630, 632 (N.D. Cal. 2015) (internal quotations and citation omitted).

21         Certifying issues for class treatment can be an efficient means for moving

22  litigation towards resolution.  *See*, *e.g.*, *Butler*, 727 F.3d at 800 ("determining

23  liability on a class-wide basis … will often be the sensible way to proceed"); *see*

24  *also Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003) ("it makes

25  good sense … to resolve those issues in one fell swoop while leaving the

26  remaining, claimant-specific issues to individual follow-on proceedings.").  "The

27  theory underlying the rule is that the advantages and economies of adjudicating

28  issues that are common to the entire class on a representative basis may be secured

1   even though other issues in the case may need to be litigated separately by each

2   class member." Wright et al., Fed. Prac. & Proc. § 1790.

3         Here, Rule 23(c)(4) grants this Court the discretion to proceed with class

4   adjudication of the key issues establishing Defendants' liability. Fed. R. Civ. P. 49

5   ("The court may require a jury to return only a special verdict in the form of a

6   special written finding on each issue of fact.").  After a fact-finder conclusively

7   determines those issues, by specific damages can be managed during a claims

8   process, involving either a Special Master or juries.  *Butler*, 727 F.3d at 800 ("a

9   class action limited to determining liability on a class-wide basis, with separate

10  hearings to determine—if liability is established—the damages of individual class

11  members, or homogeneous groups of class members, is permitted by Rule

12  23(c)(4)").  Any follow-on proceedings to determine damages would be far more

13  efficient than re-trying the core liability questions hundreds or thousands of times.

14  **III.**    <u>**Rule 42 Joinder Is Another Available Case Management Alternative.**</u>

15        Rule 42 sets out "the relatively loose requirements for … consolidation at

16  trial."  *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1112 (9th Cir. 2018).  Like

17  Rule 23, Rule 42 seeks to "identify those shared issues [of law and fact] that will

18  collectively advance the prosecution of multiple claims in a joint proceeding." *Id.*

19  Additionally, Rule 42(b) provides district courts discretion to conduct separate

20  trials for separate issues.  For instance, "[i]t is clear that Rule 42(b) gives courts the

21  authority to separate trials into liability and damage phases." *Estate of Diaz v. City*

22  *of Anaheim*, 840 F.3d 592, 601 (9th Cir. 2016).

23  **<u>CONCLUSION</u>**

24        For these reasons, Plaintiffs respectfully request that this Court grant class

25  certification under Rule 23(b)(3) or (c)(4), appoint the named Plaintiffs as Class

26  representatives, and the undersigned counsel as Class counsel.

27

28

Respectfully submitted,

Dated:    August 31, 2020        NELSON & FRAENKEL LLP


By:  */s/ Gretchen M. Nelson*

Gretchen M. Nelson (112566)
gnelson@nflawfirm.com
Carlos F. Llinás Negret (284746)
cllinas@nflawfirm.com
601 So. Figueroa Street, Suite 2050
Los Angeles, CA 90017
Telephone:  213-622-6469
Facsimile:  213-622-6019

Dated:    August 31, 2020        MARY ALEXANDER & ASSOCIATES, P.C.


By:  */s/ Mary E. Alexander*

Mary E. Alexander, Esq. (SBN 104173)
*malexander@maryalexanderlaw.com*
Brendan D.S. Way, Esq. (SBN 261705)
*bway@maryalexanderlaw.com*
44 Montgomery Street, Suite 1303
San Francisco, California 94104
Telephone: (415) 433-4440
Facsimile: (415) 433-5440

| 1 | Dated:     August 31, 2020 | LIEFF CABRASER HEIMANN & BERNSTEIN, LLP |
| 2 | | |

3

Dated:     August 31, 2020

By:   */s/ Elizabeth J. Cabraser*

Elizabeth J. Cabraser (SBN 083151)
*ecabraser@lchb.com*
Jonathan D. Selbin (SBN 170222)
*jselbin@lchb.com*
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Mark P. Chalos (*Pro Hac Vice*)
*mchalos@lchb.com*
222 2nd Avenue South, Suite 1640
Nashville, TN 37201
Telephone: (615) 313-9000
Facsimile: (212) 313-9965

*Attorneys for all Plaintiffs*

Dated:     August 31, 2020

SAUDER SCHELKOPF LLC

By:   */s/ Joseph G. Sauder*

Joseph G. Sauder (*Pro Hac Vice*)
*jgs@sstriallawyers.com*
1109 Lancaster Avenue
Berwyn, PA 19312
Telephone: (888) 711-9975
Facsimile: (610) 421-1326

*Attorney for Plaintiffs Joseph Ballin and Victoria Ballin*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF SERVICE</u>**

I, Elizabeth J. Cabraser, hereby certify that on August 31, 2020, I caused to be electronically filed **Motion and Memorandum and Points of Authorities in Support of Motion** with the Clerk of the United States District Court for the Central District of California using the CM/ECF system, which shall send electronic notification to all counsel of record.

*/s/ Elizabeth J. Cabraser*
Elizabeth J. Cabraser

- 23 -