UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-04203-RGK-SK | Date | September 22, 2020 |
| Title | *Robert Archer et al v. Carnival Corporation and PLC et al* | | |

| | | |
|---|---|---|
| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
| Joseph Remigio | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

Proceedings:  (IN CHAMBERS) Order Re: Princess Cruises' Motion to Dismiss [DE 61]; Carnival's Motion to Dismiss [DE 62]

## I.  INTRODUCTION

Plaintiffs initiated this putative class action on April 8, 2020. Plaintiffs filed a First Amended Complaint on June 2, 2020, and a Second Amended Complaint ("SAC") on August 14, 2020. The SAC is brought against Defendants Carnival Corporation, Carnival PLC, and Princess Cruise Lines, Ltd ("Princess Cruises") (collectively, "Defendants"). The SAC asserts four claims: (1) negligence, (2) gross negligence, (3) negligent infliction of emotional distress, and (4) intentional infliction of emotional distress. All of Plaintiffs' claims arise out of the COVID-19 outbreak on the *Grand Princess*—a cruise ship operated by Princess Cruises.

Presently before the Court are (1) Princess Cruises' Motion to Dismiss, and (2) Carnival's Motion to Dismiss. For the following reasons, the Court **GRANTS in part** Defendants' Motions.

## II.  FACTUAL BACKGROUND

Plaintiffs' SAC alleges the following:

### A.  The Defendants

Carnival Corporation and Carnival PLC (collectively, "Carnival") are distinct corporate entities. However, the businesses are intertwined through a number of agreements, including Carnival Corporation's Articles of Incorporation. Carnival Corporation and Carnival PLC "operate as a single economic enterprise," share a senior executive management team, and have identical boards of directors. (SAC ¶ 68, ECF No. 58.) Both entities "share a single headquarters in Miami, Florida." (*Id.*)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-04203-RGK-SK | Date | September 22, 2020 |
|---|---|---|---|
| Title | *Robert Archer et al v. Carnival Corporation and PLC et al* | | |

Carnival "claims a portfolio of cruise brands" which includes Princess Cruises. (*Id.* ¶¶ 71–72.) Carnival has ownership and control over Princess Cruises' business and day-to-day operations. Princess Cruises shares the same Board of Directors as Carnival Corporation and Carnival PLC and almost all of the same executive officers. Carnival and Princess Cruises "are alter egos and/or agents of each other such that the corporate form should be disregarded." (*Id.* ¶ 67.) Princess Cruises operates a number of cruise ships, including the *Grand Princess*.

### B. The COVID-19 Outbreak on the *Grand Princess*

Plaintiffs were passengers aboard the *Grand Princess* when it departed from San Francisco on February 21, 2020 bound for Hawaii. Before February 21, the *Grand Princess* had been on a roundtrip cruise from San Francisco to Mexico. The Mexico cruise departed on February 11 and was scheduled to return to San Francisco on February 21. At that time, the plan was for the *Grand Princess* to off-load all but 62 passengers from the Mexico cruise and then onboard the passengers for the Hawaii cruise. The problem, however, was that some of the passengers on the Mexico cruise were infected with SARS-CoV-2, the virus which causes COVID-19. This led to an outbreak on the *Grand Princess* which resulted in numerous individuals contracting COVID-19.

Defendants knew or should have known about the risk of a COVID-19 outbreak on the ship. First, Defendants knew that cruise ships create a heightened risk of viral outbreak. According to an article co-authored by Defendants' own Senior Vice President and Chief Medical Officer, Dr. Grant Tarling, cruise ships "represent a potential source for introduction of novel or antigenetically drifted influenza strains" and cruise ship characteristics, such as "close quarters and prolonged contact among travelers on ships…increase the risk of communicable disease transmission." (*Id.* ¶ 125.)

Second, several international organizations had issued statements recognizing the severity of the situation. On January 30, 2020, the World Health Organization declared COVID-19 a global health emergency. Further, in early February, the European Union "released specific guidelines for the cruise industry that included an outline of the risk of COVID-19 outbreaks aboard cruise ships and recommended response protocols." (*Id.* ¶ 112.)

Third, Defendants had already experienced a COVID-19 outbreak on another cruise ship: the *Diamond Princess*. The CDC even issued a statement about the outbreak on the *Diamond Princess* on February 18, stating: "CDC believes the rate of new reports of positives [now] on board, especially among those without symptoms, highlights the high burden of infection on the ship and the potential for ongoing risk." (*Id.* ¶ 116.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-04203-RGK-SK | Date | September 22, 2020 |
|---|---|---|---|
| Title | *Robert Archer et al v. Carnival Corporation and PLC et al* | | |

Fourth, at least one passenger on the Mexico cruise was suffering from COVID-19 symptoms. On February 20, an infected passenger on the Mexico cruise sought treatment at the ship's medical center for "acute respiratory distress." (*Id.* ¶ 134.) It appears that at least three other passengers on the Mexico cruise also suffered from COVID-19 symptoms while on the vessel. (*Id.* ¶ 135.) Defendants thus should have known that the passengers from the Mexico cruise who also departed on the Hawaii cruise had been exposed to the virus. (*Id.* ¶ 139.)

Despite knowing the risks of setting sail during a pandemic, Defendants proceeded with the Hawaii cruise without providing appropriate personal protective equipment ("PPE"), and without taking other measures to prevent spread of the virus. Just as they had on the *Diamond Princess*, Defendants chose to "keep the fun going" by continuing to host large public gatherings until March 4, more than a week into the voyage. (*Id.* ¶¶ 114, 149.) Even after March 4, when passengers were reporting signature symptoms of COVID-19, Defendants continued to hold public events such as Formal Night and its associated dinner. (*Id.* ¶ 149.)

### C.    Plaintiffs' Experiences

As a result of Defendants' actions and omissions, Plaintiffs were all exposed (in close proximity and for extended periods of time) to individuals who had or likely had COVID-19. Most Plaintiffs "suffered symptoms [of COVID-19] in line with the clinical criteria identified by the CDC and [Council of State and Territorial Epidemiologists]." (SAC ¶ 168.) For example, Plaintiff Robert Archer ("Archer") "suffered from chills, fatigue, cough, and diarrhea, as well as numbness in his feet, ankles, and shins[.]" (*Id.* ¶ 169.) Plaintiff Pamela Giusti ("Giusti") "suffered from fever, fatigue, and a loss of smell and taste." (*Id.* ¶ 173.) And Plaintiff Allen McFadden ("McFadden") "suffered from nausea and a loss of appetite[.]" (*Id.* ¶ 181.)

Some Plaintiffs tested positive for COVID-19, while others tested positive for COVID-19 antibodies. For many Plaintiffs, the SAC does not specify whether they were ever tested for COVID-19 or COVID-19 antibodies. For example, the SAC alleges that Archer tested positive for COVID-19 antibodies and Giusti tested positive for COVID-19. But the SAC is silent as to McFadden.

Plaintiffs "were traumatized by their direct exposure to COVID-19, the risk that they would contract the virus, and the reasonable apprehension associated with that risk, as well as by their confinement on an infected vessel in isolation and for two weeks, on military bases, in some cases knowing that their friends and loved ones were suffering from, or could contract, a potentially lethal illness." (*Id.* ¶ 203.) Plaintiffs also suffer anxiety that they may later experience negative effects or complications as a result of their exposure to SARS-CoV-2. (*Id.* ¶ 205.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-04203-RGK-SK | Date | September 22, 2020 |
| Title | *Robert Archer et al v. Carnival Corporation and PLC et al* | | |

### III. JUDICIAL STANDARD

Under Federal Rule of Civil Procedure ("Rule") 8(a), a complaint must contain a "short and plain statement of the claim showing that the [plaintiff] is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). If a complaint fails to adequately state a claim for relief, the defendant may move to dismiss the claim under Rule 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible if the plaintiff alleges enough facts to allow the court to draw a reasonable inference that the defendant is liable. *Id.* A plaintiff need not provide detailed factual allegations, but must provide more than mere legal conclusions. *Twombly*, 550 U.S. at 555. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Iqbal*, 556 U.S. at 678.

When ruling on a 12(b)(6) motion, the court must accept the allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Dismissal is "appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

### IV. DISCUSSION

Defendants move to dismiss the SAC on several grounds. The Court addresses each in turn.

#### A. The Class-Action Allegations

First, Princess Cruises argues that Plaintiffs' class-action allegations must be dismissed or struck because Plaintiffs entered into a passage contract which includes a class-action waiver. Plaintiffs do not dispute that they assented to the terms of the passage contract, including the class-action waiver. Plaintiffs, however, contend that the class-action waiver is unenforceable.

The Court finds that a ruling on the enforceability of the class-action waiver would be premature at this time. Plaintiffs have recently filed a motion for class certification. In their opposition to that motion, Defendants argue that certification should be denied because Plaintiffs are bound by the class-action waiver. The Court is best equipped to rule on the enforceability of that waiver in the context of the motion for class certification, rather than the present Motion to Dismiss. *See In re Apple, AT & T iPad Unlimited Data Plan Litig.*, No. C-10-02553 RMW, 2012 WL 2428248, at *2 (N.D. Cal. June 26,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-04203-RGK-SK | Date | September 22, 2020 |
|---|---|---|---|
| Title | *Robert Archer et al v. Carnival Corporation and PLC et al* | | |

2012) (noting that "motions to strike class allegations are disfavored because a motion for class certification is a more appropriate vehicle for arguments pertaining to class allegations.") The Court therefore denies Princess Cruises' Motion without prejudice insofar as it asks the Court to dismiss or strike the class-action allegations.

### B. Negligence, Gross Negligence, and Negligent Infliction of Emotional Distress

The Court next considers whether Plaintiffs have sufficiently alleged their claims for negligence, gross negligence, and negligent infliction of emotional distress ("NIED") against Carnival. The parties appear to agree that federal maritime law applies to all of Plaintiffs' tort claims, including all three of Plaintiffs' negligence-based claims. To state a claim for negligence under federal maritime law, the plaintiff must allege that (1) the defendant owed a duty of care to the plaintiff, (2) the defendant's breach of that duty, (3) injury sustained by the plaintiff, and (4) a causal connection between the defendant's conduct and the plaintiff's injury. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1070 (9th Cir. 2001).

Here, Carnival argues that Plaintiffs' negligence-based claims should be dismissed because: (1) Plaintiffs have not plausibly alleged that Carnival is the alter ego of Princess Cruises; (2) Plaintiffs fail to adequately allege causation; (3) Plaintiffs have not alleged Carnival's actual or constructive notice of a risk-creating condition; and (4) Plaintiffs have not alleged that they suffered concrete, harmful symptoms of COVID-19.

#### 1. *Carnival's Alter-Ego Status*

The Court first considers whether Plaintiffs have plausibly alleged Carnival's alter-ego status. As set forth above, to prevail on their negligence-based claims, Plaintiffs must show that Carnival owed a duty of care to Plaintiffs. Under maritime law, the duty of care generally extends to the owner of a ship, *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959), and the vessel's operator, *Karvelis v. Constellation Lines S.A.*, 806 F.2d 49, 52 (2d Cir. 1986), of which Carnival is neither.[1] Absent another basis to impose a duty of care on Carnival, Plaintiffs' negligence-based claims against Carnival appear to hinge on whether Carnival is the alter ego of Princess Cruises.

The Ninth Circuit has observed that "[a]dmiralty courts may pierce the corporate veil in order to reach the 'alter egos' of a corporate defendant." *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1294

---

[1] The Court does not go so far as to rule that the duty of care extends *only* to the owner of a ship and the vessel's operator. Carnival made this argument in a separate case before this Court, *Wong v. Carnival Corporation & PLC et al*, Case No. 29094727, ECF No. 23, but does not do so here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-04203-RGK-SK | Date | September 22, 2020 |
|---|---|---|---|
| Title | *Robert Archer et al v. Carnival Corporation and PLC et al* | | |

(9th Cir. 1997). "Federal courts sitting in admiralty generally apply federal common law when examining corporate identity." *Id.* (citing *In re Holborn Oil Trading Ltd.*, 774 F. Supp. 840, 844 (S.D.N.Y. 1991)). "Corporate separateness is respected unless doing so would work injustice upon an innocent third party." *Kilkenny v. Arco Marine Inc.*, 800 F.2d 853, 859 (9th Cir. 1986). To justify piercing the corporate veil, the court must find "that the controlling corporate entity exercise[s] total domination of the subservient corporation, to the extent that the subservient corporation manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation." *Id.* (internal quotation marks omitted). "As formulated by the Second Circuit, federal common law allows piercing of the corporate veil where a corporation uses its alter ego to perpetrate a fraud or where it so dominates and disregards its alter ego's corporate form that the alter ego was actually carrying on the controlling corporation's business instead of its own." *Chan*, 123 F.3d at 1294.

Plaintiffs argue that they have plausibly alleged that Carnival is the alter ego of Princess Cruises based on the following allegations:

- In a Carnival Corporation's filing with the Securities and Exchange Commission ("SEC"), Carnival claims a portfolio of cruise brands, which includes Princess. Carnival states that it "operate[s] over 100 cruise ships within a portfolio of leading global, regional and national cruise brands." It further provides details about the capacity of each of its subsidiary brands and each brand's percentage of Carnival's total capacity. (SAC ¶ 71.)

- In a federal criminal plea agreement signed by Carnival, Carnival stated that it "currently monitors and supervises environmental, safety, security, and regulatory requirements for Princess and other Carnival brands." (*Id.* ¶ 73.)

- The Chief Medical Officer for Princess Cruises, Dr. Grant Tarling, serves the exact same role for each of the cruise lines under Carnival's Holland America Group. In this role, Tarling provided multiple messages on behalf of Princess and Carnival through YouTube and Facebook regarding the status of the COVID-19 outbreak about the Diamond Princess and about safety measures Princess Cruises and Carnival claimed to implement to Princess ships. (*Id.* ¶ 75.)

- Carnival and Princess Cruises share the same board of directors and almost all of the same executive officers. (*Id.* ¶ 76.)

- In past SEC filings, Carnival has claimed the Grand Princess as one of its assets for purposes of aggregating carnival's own worth, financial condition and abilities, allowing it to leverage this value for its own benefit. (*Id.* ¶ 77.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-04203-RGK-SK | Date | September 22, 2020 |
|---|---|---|---|
| Title | *Robert Archer et al v. Carnival Corporation and PLC et al* | | |

- On Carnival's web page describing its Health, Environment, Safety and Security policy, it identifies Princess Cruises as a part of Carnival, representing that the policy applies to both Carnival and Princess Cruises. (*Id.* ¶ 127.)

- Carnival directed the manner in which Princess Cruises responded to COVID-19 outbreaks on Princess cruise ships. (*Id.* ¶¶ 150–51.)

Carnival counters that Plaintiffs' allegations do not suggest anything beyond a typical parent-subsidiary relationship, which is insufficient to establish alter ego status as a matter of law. Carnival also contends that Plaintiffs' purported examples of Carnival exerting control and domination over Princess are insufficient and conclusory.

The Court agrees with Carnival that the SAC fails to plausibly allege that Carnival is the alter ego of Princess Cruises. The standard for piercing the corporate veil is a high one: Plaintiffs must allege "that the controlling corporate entity exercise[s] *total domination* of the subservient corporation[.]" *Kilkenny*, 800 F.2d at 859 (emphasis added). That standard has not been satisfied here. To be sure, Plaintiffs' alter ego allegations are stronger than those alleged in *Wong v. Carnival Corporation & PLC et al*, Case No. 29094727. However, they still fail to rise to the level necessary to pierce the corporate veil. For one, Carnival correctly observes that "'the mere fact that one corporation owns all the shares in another does not render it liable for the torts of the latter'—even when 'two corporations have common shareholders, officers or directors.'" (Carnival's Reply at 9, ECF No. 77 (quoting 10 Fletcher Cyclopedia of the Law of Corporations § 4878 (West 2019)); *see also United States v. Bestfoods*, 524 U.S. 51, 61 (1998). Similarly, it is not enough that Carnival exercises some supervision over Carnival, such as directing the manner in which Princess Cruises responded to the COVID-19 outbreaks. In short, Plaintiffs have not plausibly alleged that Carnival exercises total domination over Princess Cruises, such that Princess Cruises manifests no separate corporate interests of its own and functions solely to achieve the purposes of the Carnival. The Court therefore dismisses Plaintiffs' negligence-based claims against Carnival without prejudice. Should Plaintiffs file an amended complaint, they must plausibly allege Carnival's alter-ego status. If Plaintiffs are unable to do so, then the Court will dismiss the negligence-based claims against Carnival unless Plaintiffs can show an alternative basis to impose a duty of care on Carnival.

2. *Causation*

Carnival also contends that Plaintiffs have insufficiently alleged causation. Carnival points out that only three Plaintiffs allege that they contracted symptoms during the *Grand Princess*' voyage or shortly thereafter. Meanwhile, the remaining Plaintiffs who allege symptoms do not specify when their symptoms began.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-04203-RGK-SK | Date | September 22, 2020 |
|---|---|---|---|
| Title | *Robert Archer et al v. Carnival Corporation and PLC et al* | | |

The Court agrees that Plaintiffs have failed to adequately allege causation. The SAC alleges that "[m]ost Plaintiffs [] suffered symptoms in line with the clinical criteria identified by the CDC and the CSTE." (SAC ¶ 168.) Many Plaintiffs allege that they either tested positive for COVID-19 or COVID-19 antibodies. However, Plaintiffs do not allege *when* they tested positive for COVID-19, when they tested positive for COVID-19 antibodies, or when they first began experiencing symptoms. While a plaintiff need not rule out all other possible causes of harm, the complaint must include factual allegations that "allow[] the court to draw the reasonable inference" that the defendant's conduct caused the alleged harm. *Iqbal*, 556 U.S. at 678. Here, Plaintiffs have failed to allege sufficient factors to render the causation allegations plausible, not merely possible. The Court therefore dismisses Plaintiffs' claims without prejudice. Should Plaintiffs file an amended complaint, they must allege when they contracted COVID-19 (i.e., when they were exposed to COVID-19), when they tested positive for COVID-19 and/or COVID-19 antibodies, and when they first began experiencing COVID-19 symptoms.

        3.    *The Sufficiency of the Symptoms and Carnival's Notice of a Risk-Creating Condition*

The Court has already dismissed Plaintiffs' negligence-based claims for the reasons set forth above. Thus, the Court does not reach Carnival's two remaining arguments.

**C.**    **Intentional Infliction of Emotional Distress**

The Court next turns to Plaintiffs' claim for intentional infliction of emotional distress ("IIED"). Although the Ninth Circuit has "held that claims for emotional distress are cognizable under admiralty law, there appears to be no established maritime standard for evaluating such claims." *Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 841 (9th Cir. 2002) (citations omitted). In *Wallis*, the Ninth Circuit relied on the Restatement (Second) of Torts to evaluate an IIED claim. *Id.* "Section 46 of the Restatement states in pertinent part: 'One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.'" *Id.* (quoting Restatement (Second) of Torts § 46 (1965)). Comment d reads, in relevant part:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. *Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-04203-RGK-SK | Date | September 22, 2020 |
|---|---|---|---|
| Title | *Robert Archer et al v. Carnival Corporation and PLC et al* | | |

> *intolerable in a civilized community.* Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Restatement (Second) of Torts § 46 cmt. d (1965) (emphasis added).

Here, Defendants argue that Plaintiffs fail to sufficiently allege that Defendants engaged in extreme and outrageous conduct. Defendants aver that the alleged conduct is simply not "beyond all bound of decency," "atrocious," or "utterly intolerable" as required to plead an IIED claim. (Princess Cruises' Mot. at 12, ECF No. 61.) Defendants also aver that if Plaintiffs have stated a claim here, this will lead to a flood of IIED claims against business or individuals who fail to implement measures to prevent the spread of COVID-19.

The Court cannot conclude that Plaintiffs' allegations are insufficient as a matter of law to establish that Defendants engaged in extreme and outrageous conduct. Comment h to § 46 of the Restatement reads:

> It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability.

Restatement (Second) of Torts § 46 cmt. h (1965). In this case, "reasonable men may differ" on whether the conduct alleged in the SAC is sufficiently extreme and outrageous to permit recovery. *Id.* The Court therefore declines to dismiss Plaintiffs' IIED claim on this basis.

**D.    Injunctive Relief**

Finally, Defendants argue that Plaintiffs' request for injunctive relief must be dismissed under Rule 12(b)(1) because Plaintiffs lack Article III standing to seek prospective relief.

To satisfy Article III, a plaintiff must establish (1) an injury-in-fact that is (2) fairly traceable to the challenged action of the defendant and (3) redressable by a favorable ruling from the court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The plaintiff "bears the burden of showing that he has standing for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). "To seek injunctive relief, a plaintiff must show that he is under threat of suffering [an] 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-04203-RGK-SK | Date | September 22, 2020 |
|---|---|---|---|
| Title | *Robert Archer et al v. Carnival Corporation and PLC et al* | | |

must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Id.* (quoting *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180–181(2000)). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561.

Here, Defendants argue that Plaintiffs lack standing to pursue injunctive relief because they face no *imminent* threat of future injury. Defendants point out that Princess has voluntarily suspended all passenger cruise operations worldwide and contend that "[t]here is no evidence (nor even an allegation) that Princess will start operating under the same procedures, or that widespread rapid testing, a vaccine or other therapeutic treatment might be available when Princess resumes cruises." (Princess Cruises' Mot. Dis. at 16, ECF No. 61.) Plaintiffs, however, counter that they have standing to seek injunctive relief because they would like to take cruises in the future. Specifically, Plaintiffs point to the allegation that "[i]n the future, Plaintiffs would like to go on cruises again, including cruises operated by Defendants, if corrective action is taken such that Plaintiffs can reasonably rely on Defendants to protect their health and safety." (SAC ¶ 207.)

Plaintiffs have alleged a concrete and particularized injury—namely, that "Defendants loaded [Plaintiffs] on a ship they knew was infested with a potentially lethal virus without warning them of the risks of contracting and spreading the virus, without providing appropriate personal protective equipment ("PPE"), and without taking other effective measures to prevent the spread of the virus." (Opp. to Princess Cruises' Mot. at 14, ECF No. 67.) However, Plaintiffs have not adequately alleged that the threat of *future injury* is imminent. Plaintiffs' vague allegation that they would like to go on cruises again in the future "is simply not enough." *Lujan*, 504 U.S. at 560. "Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Id.* The Court therefore dismisses Plaintiffs' request for injunctive relief without prejudice.

  **E.**  **Punitive Damages**

Finally, Defendants move to strike Plaintiffs' prayer for punitive damages. The Court has already dismissed Plaintiffs' gross negligence claim with leave to amend. Plaintiffs seek punitive damages on both their gross negligence and IIED claims. Because it is not clear whether Plaintiffs will renew their request for punitive damages in an amended Complaint, the Court will defer ruling on this issue. If Plaintiffs file an amended complaint, Defendants may renew this argument in a subsequent motion to dismiss or strike.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-04203-RGK-SK | Date | September 22, 2020 |
| Title | *Robert Archer et al v. Carnival Corporation and PLC et al* | | |

V.  **CONCLUSION**

For the foregoing reasons, the Court **GRANTS in part** Defendants' Motions. Any amended Complaint must be filed within **10 calendar days of Order's issuance.**

**IT IS SO ORDERED.**

                                                                                                                                   _____ : _____

Initials of Preparer            jre