UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-04203-RGK-SK | Date | November 25, 2020 |
|---|---|---|---|
| Title | *Robert Archer et al v. Carnival Corporation and PLC et al* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Joseph Remigio | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:**   (IN CHAMBERS) Order Re: Defendants' Motion to Dismiss [DE 89]

## I.   INTRODUCTION

Plaintiffs initiated this putative class action on April 8, 2020. Plaintiffs filed a First Amended Complaint on June 2, 2020, and a Second Amended Complaint ("SAC") on August 14, 2020. The SAC is brought against Defendants Carnival Corporation, Carnival PLC, and Princess Cruise Lines, Ltd ("Princess Cruises") (collectively, "Defendants"). The SAC asserted four claims: (1) negligence, (2) gross negligence, (3) negligent infliction of emotional distress, and (4) intentional infliction of emotional distress. All of Plaintiffs' claims arise out of the COVID-19 outbreak on the *Grand Princess*—a cruise ship operated by Princess Cruises. On September 22, 2020, the Court granted in part Defendants' Motion the SAC to dismiss but granted Plaintiffs leave to amend. Plaintiffs filed their Third Amended Complaint ("TAC") on October 2, 2020.

Presently before the Court is Defendants' Motion to Dismiss the TAC. For the following reasons, the Court **GRANTS in part and DENIES in part** Defendants' Motions.

## II.   FACTUAL BACKGROUND

Plaintiffs' TAC alleges the following:

### A.   The Defendants

Carnival Corporation and Carnival PLC (collectively, "Carnival") are distinct corporate entities. However, the businesses are intertwined through a number of agreements, including Carnival Corporation's Articles of Incorporation. Carnival Corporation and Carnival PLC "operate as a single economic enterprise," share a senior executive management team, and have identical boards of directors. (TAC ¶ 68, ECF No. 84.) Both entities "share a single headquarters in Miami, Florida." (*Id.*)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-04203-RGK-SK | Date | November 25, 2020 |
|---|---|---|---|
| Title | *Robert Archer et al v. Carnival Corporation and PLC et al* | | |

Carnival "claims a portfolio of cruise brands" which includes Princess Cruises. (*Id.* ¶¶ 71–72.) Carnival has ownership and control over Princess Cruises' business and day-to-day operations. Princess Cruises shares the same Board of Directors as Carnival Corporation and Carnival PLC and almost all of the same executive officers. Carnival and Princess Cruises "are alter egos and/or agents of each other such that the corporate form should be disregarded." (*Id.* ¶ 67.) Princess Cruises operates a number of cruise ships, including the *Grand Princess*.

**B.      The COVID-19 Outbreak on the *Grand Princess***

Plaintiffs were passengers aboard the *Grand Princess* when it departed from San Francisco on February 21, 2020 bound for Hawaii. Before February 21, the *Grand Princess* had been on a roundtrip cruise from San Francisco to Mexico. The Mexico cruise departed on February 11 and was scheduled to return to San Francisco on February 21. At that time, the plan was for the *Grand Princess* to off-load all but 62 passengers from the Mexico cruise and then board the passengers for the Hawaii cruise. The problem, however, was that some of the passengers on the Mexico cruise were infected with SARS-CoV-2, the virus which causes COVID-19. This led to an outbreak on the *Grand Princess* which resulted in numerous individuals contracting COVID-19.

Defendants knew or should have known about the risk of a COVID-19 outbreak on the ship. First, Defendants knew that cruise ships create a heightened risk of viral outbreak. According to an article co-authored by Defendants' own Senior Vice President and Chief Medical Officer, Dr. Grant Tarling, cruise ships "represent a potential source for introduction of novel or antigenetically drifted influenza strains" and cruise ship characteristics, such as "close quarters and prolonged contact among travelers on ships…increase the risk of communicable disease transmission." (*Id.* ¶ 128.)

Second, several international organizations had issued statements recognizing the severity of the situation. On January 30, 2020, the World Health Organization declared COVID-19 a global health emergency. Further, in early February, the European Union "released specific guidelines for the cruise industry that included an outline of the risk of COVID-19 outbreaks aboard cruise ships and recommended response protocols." (*Id.* ¶ 118.)

Third, Defendants had already experienced a COVID-19 outbreak on another cruise ship: the *Diamond Princess*. The CDC even issued a statement about the outbreak on the *Diamond Princess* on February 18, stating that "the rate of new reports of positives [now] on board, especially among those without symptoms, highlights the high burden of infection on the ship and the potential for ongoing risk." (*Id.* ¶ 122.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-04203-RGK-SK | Date | November 25, 2020 |
|---|---|---|---|
| Title | *Robert Archer et al v. Carnival Corporation and PLC et al* | | |

Fourth, at least one passenger on the Mexico cruise was suffering from COVID-19 symptoms. On February 20, an infected passenger on the Mexico cruise sought treatment at the ship's medical center for "acute respiratory distress." (*Id.* ¶ 145.) It appears that at least three other passengers on the Mexico cruise also suffered from COVID-19 symptoms while on the vessel. (*Id.* ¶ 146.) Defendants thus should have known that the passengers from the Mexico cruise who also departed on the Hawaii cruise had been exposed to the virus. (*Id.* ¶ 150.) On February 25, 2020, Defendants "sent emails to passengers who disembarked from the San Francisco-to-Mexico trip on February 21, 2020 . . . . The email alerted the earlier passengers about their potential exposure to COVID-19 during their time on the cruise." (*Id.* ¶ 153.) But no notice was given to the passengers onboard the ship on February 25, 2020. (*Id.*)

Despite knowing the risks of setting sail during a pandemic, Defendants proceeded with the Hawaii cruise without providing appropriate personal protective equipment ("PPE"), and without taking other measures to prevent spread of the virus. Just as they had on the *Diamond Princess*, Defendants chose to "keep the fun going" by continuing to host large public gatherings until March 4, more than a week into the voyage. (*Id.* ¶ 120.) Even after March 4, when passengers were reporting signature symptoms of COVID-19, Defendants continued to hold public events such as Formal Night and its associated dinner. (*Id.* ¶ 160.)

### C. Plaintiffs' Experiences

As a result of Defendants' actions and omissions, Plaintiffs were all exposed (in close proximity and for extended periods of time) to individuals who had or likely had COVID-19. Most Plaintiffs "suffered symptoms [of COVID-19] in line with the clinical criteria identified by the CDC and [Council of State and Territorial Epidemiologists]." (*Id.* ¶ 181.) For example, Plaintiff Robert Archer ("Archer") "suffered from chills, fever, and diarrhea" as well as "numbness in his feet, ankles, and shins[.]" (*Id.* ¶ 184.) Plaintiff Pamela Giusti ("Giusti") experienced "fever, fatigue, and a loss of smell and taste." (*Id.* ¶ 196.) And Plaintiff Allen McFadden ("McFadden") suffered "from nausea and a loss of appetite[.]" (*Id.* ¶ 219.)

Some Plaintiffs tested positive for COVID-19, while others tested positive for COVID-19 antibodies. For many Plaintiffs, the TAC does not specify whether they were ever tested for COVID-19 or COVID-19 antibodies. For example, the SAC alleges that Archer tested positive for COVID-19 antibodies and Giusti tested positive for COVID-19. But the TAC is silent as to McFadden.

Plaintiffs "were traumatized by their direct exposure to COVID-19, the risk that they would contract the virus, and the reasonable apprehension associated with that risk, as well as by their confinement on an infected vessel in isolation and for two weeks, on military bases, in some cases

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-04203-RGK-SK | Date | November 25, 2020 |
|---|---|---|---|
| Title | *Robert Archer et al v. Carnival Corporation and PLC et al* | | |

knowing that their friends and loved ones were suffering from, or could contract, a potentially lethal illness." (*Id.* ¶ 272.) Plaintiffs also suffer anxiety that they may later experience negative effects or complications as a result of their exposure to SARS-CoV-2. (*Id.* ¶ 271.)

### III.   JUDICIAL STANDARD

Under Federal Rule of Civil Procedure ("Rule") 8(a), a complaint must contain a "short and plain statement of the claim showing that the [plaintiff] is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). If a complaint fails to adequately state a claim for relief, the defendant may move to dismiss the claim under Rule 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible if the plaintiff alleges enough facts to allow the court to draw a reasonable inference that the defendant is liable. *Id.* A plaintiff need not provide detailed factual allegations, but must provide more than mere legal conclusions. *Twombly*, 550 U.S. at 555. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Iqbal*, 556 U.S. at 678.

When ruling on a 12(b)(6) motion, the court must accept the allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Dismissal is "appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

### IV.   DISCUSSION

Defendants move to dismiss the TAC on several grounds. The Court addresses each in turn.

#### A.   Negligence, Gross Negligence, and Negligent Infliction of Emotional Distress

The Court next considers whether Plaintiffs have sufficiently alleged their claims for negligence, gross negligence, and negligent infliction of emotional distress ("NIED") against Carnival. The parties appear to agree that federal maritime law applies to all of Plaintiffs' tort claims, including all three of Plaintiffs' negligence-based claims. To state a claim for negligence under federal maritime law, the plaintiff must allege that (1) the defendant owed a duty of care to the plaintiff, (2) the defendant's breach of that duty, (3) injury sustained by the plaintiff, and (4) a causal connection between the defendant's conduct and the plaintiff's injury. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1070 (9th Cir. 2001).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-04203-RGK-SK | Date | November 25, 2020 |
|---|---|---|---|
| Title | *Robert Archer et al v. Carnival Corporation and PLC et al* | | |

Here, Defendants argues that Plaintiffs' negligence-based claims should be dismissed because: (1) Plaintiffs have not adequately alleged claims against Carnival; (2) Plaintiffs fail to adequately allege causation; and (3) Plaintiffs have not alleged Defendants' actual or constructive notice of a risk-creating condition.

      1.    <u>Liability Against Carnival</u>

Plaintiffs assert three theories of liability towards Carnival: (1) that Carnival is the alter ego of Princess; (2) that Carnival undertook an independent duty of care to Plaintiffs; and (3) that Princess was Carnival's agent. The Court addresses each in turn.

      *a.*    *Carnival's Alter-Ego Status*

To prevail on their negligence-based claims, Plaintiffs must show that Carnival owed a duty of care to Plaintiffs. Under maritime law, the duty of care generally extends to the owner of a ship, *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959), and the vessel's operator, *Karvelis v. Constellation Lines S.A.*, 806 F.2d 49, 52 (2d Cir. 1986), of which Carnival is neither.[1] Thus, Plaintiffs must plausibly allege that Carnival is the alter ego of Princess.

The Ninth Circuit has observed that "[a]dmiralty courts may pierce the corporate veil in order to reach the 'alter egos' of a corporate defendant." *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1294 (9th Cir. 1997). "Federal courts sitting in admiralty generally apply federal common law when examining corporate identity." *Id.* (citing *In re Holborn Oil Trading Ltd.*, 774 F. Supp. 840, 844 (S.D.N.Y. 1991)). "Corporate separateness is respected unless doing so would work injustice upon an innocent third party." *Kilkenny v. Arco Marine Inc.*, 800 F.2d 853, 859 (9th Cir. 1986). To justify piercing the corporate veil, the court must find "that the controlling corporate entity exercise[s] total domination of the subservient corporation, to the extent that the subservient corporation manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation." *Id.* (internal quotation marks omitted). "As formulated by the Second Circuit, federal common law allows piercing of the corporate veil where a corporation uses its alter ego to perpetrate a fraud or where it so dominates and disregards its alter ego's corporate form that the alter ego was actually carrying on the controlling corporation's business instead of its own." *Chan*, 123 F.3d at 1294.

---

[1] The Court does not go so far as to rule that the duty of care extends *only* to the owner of a ship and the vessel's operator. Carnival made this argument in a separate case before this Court, *Wong v. Carnival Corporation & PLC et al*, Case No. 29094727, ECF No. 23, but does not do so here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-04203-RGK-SK | Date | November 25, 2020 |
|---|---|---|---|
| Title | *Robert Archer et al v. Carnival Corporation and PLC et al* | | |

Plaintiffs' SAC argued that Carnival is the alter ego of Princess based on the following allegations:

- In a Carnival Corporation's filing with the Securities and Exchange Commission ("SEC"), Carnival claims a portfolio of cruise brands, which includes Princess. Carnival states that it "operate[s] over 100 cruise ships within a portfolio of leading global, regional and national cruise brands." It further provides details about the capacity of each of its subsidiary brands and each brand's percentage of Carnival's total capacity. (SAC ¶ 71.)

- In a federal criminal plea agreement signed by Carnival, Carnival stated that it "currently monitors and supervises environmental, safety, security, and regulatory requirements for Princess and other Carnival brands." (*Id.* ¶ 75.)

- The Chief Medical Officer for Princess Cruises, Dr. Grant Tarling, serves the exact same role for each of the cruise lines under Carnival's Holland America Group. In this role, Tarling provided multiple messages on behalf of Princess and Carnival through YouTube and Facebook regarding the status of the COVID-19 outbreak about the Diamond Princess and about safety measures Princess Cruises and Carnival claimed to implement to Princess ships. (*Id.* ¶ 73.)

- Carnival and Princess Cruises share the same board of directors and almost all of the same executive officers. (*Id.*)

- In past SEC filings, Carnival has claimed the Grand Princess as one of its assets for purposes of aggregating carnival's own worth, financial condition and abilities, allowing it to leverage this value for its own benefit. (*Id.*)

- On Carnival's web page describing its Health, Environment, Safety and Security policy, it identifies Princess Cruises as a part of Carnival, representing that the policy applies to both Carnival and Princess Cruises. (*Id.*)

- Carnival directed the manner in which Princess Cruises responded to COVID-19 outbreaks on Princess cruise ships. (*Id.* ¶ 162.)

The Court found these allegations insufficient to establish that Carnival was Princess's alter ego. Plaintiffs now add several new allegations in their TAC:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-04203-RGK-SK | Date | November 25, 2020 |
|---|---|---|---|
| Title | *Robert Archer et al v. Carnival Corporation and PLC et al* | | |

- After Princess pled guilty to federal charges of illegal dumping, Carnival signed the plea agreement, even though Carnival was not a defendant in the action. (*Id.* ¶¶ 74, 76.)

- In 2019, at Princess's probation revocation hearing, it was Carnival's CEO and three other members of the "Executive Committees of the Boards of Directors of Carnival Corporation and Carnival plc, but no representatives of PRINCESS" who admitted to violating probation. (*Id.* ¶ 78.) And it was CARNIVAL's CEO who stated that he "personally accepts management responsibility for the probation violations . . . ." (*Id.*)

- Carnival undertook "steps to strengthen and enhance its oversight and compliance structure," such as creating the position of Chief Maritime Officer; promulgating Health, Environmental, Safety, and Security ("HESS") policies for Princess, and "by promising the federal government that it would ensure Princess's compliance with the HESS policy." (*Id.* ¶ 73.)

- Carnival created a new Chief Ethics and Compliance Officer to "further develop our ethics and compliance program across the entire corporation" and to "shape and implement the program initiatives in each of the operating companies." (*Id.* ¶ 79.)

- In March 2020, Carnival implemented a temporary pause of Princess Cruises due to the COVID-19 pandemic.

- In September 2020, Carnival announced that it would sell two Princess Cruise ships because the sale of the ships "is in line with parent company Carnival Corporation's plan to accelerate the removal of less efficient ships from its fleet." (*Id.* ¶ 81.)

- Carnival determines Princess's executives' bonuses through its Management Incentive Plan. (*Id.* ¶ 73.)

As stated in its previous Order, "the standard for piercing the corporate veil is a high one." (Order at 7, ECF No. 82.) Plaintiffs must allege "that the controlling corporate entity exercise[s] *total domination* of the subservient corporation[.]" *Kilkenny*, 800 F.2d at 859 (own emphasis added). The new allegations still do not cross that threshold. For one, the Court has indicated that, "it is not enough that Carnival exercises some supervision over Carnival, such as directing the manner in which Princess Cruises responded to the COVID-19 outbreaks." (Order at 7.) Thus, Carnival's purported decision to pause Princess's ships is nothing more than Carnival "directing the manner" to how Princess should respond to the current pandemic. Similarly, the allegations that Carnival created new executive positions in response to COVID-19 only demonstrate that Carnival sought to ensure compliance with Carnival's new policies. (TAC ¶ 79) ("further develop our ethics and *compliance* program across the entire

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-04203-RGK-SK | Date | November 25, 2020 |
|---|---|---|---|
| Title | *Robert Archer et al v. Carnival Corporation and PLC et al* | | |

corporation") (own emphasis added); (*Id.* ¶ 73) ("[S]teps to strengthen and enhance its *oversight and compliance structure*.") (own emphasis added). Such supervisory control is not "total domination." And the allegation that Carnival plans to sell two of Princess's cruise ships are normal corporate decisions within the parent-subsidiary context. Finally, Plaintiffs' allegations that Carnival signed a criminal plea agreement along with Princess does not show that "the controlling corporate entity exercise[s] total domination of the subservient corporation, to the extent that the subservient corporation manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation." *Kilkenny*, 800 F.2d at 859. The fact that Carnival's CEO admitted to violating the plea agreement does not change this analysis. According to the TAC, the "plea agreement required *CARNIVAL* to fund and implement an Environmental Compliance Plan ("ECP") across all of its brands . . . ." TAC ¶ 76 (own emphasis added). When the government found that the ECP had not been fully implemented, it follows that Carnival's CEO would admit fault.

Accordingly, the Court finds that Plaintiffs have not plausibly alleged Carnival's alter-ego status.

        b.      *Carnival's Independent Basis Duty of Care*

Courts have held that a parent corporation may be liable for the acts of its subsidiaries when the parent company either performs a service for the subsidiary or retains control of the subsidiary which resulted in the plaintiff's injuries. *See Morgan v. Baker Hughes, Inc.*, 847 F.3d 1251, 1254 (10th Cir. 2020) ("Instead, a parent company can only be held liable for the acts of its subsidiary where it assumed some independent legal duty by retaining or exercising control over some aspect of the operation of the subsidiary corporation which was involved in the incident resulting in the plaintiff's injuries.") (quoting *Morgan v. Baker Hughes Inc.*, 728 F. App'x 850, 854 (10th Cir. 2018)); *Dorn v. Astra U.S., Inc.*, No. 96-11124-MEL, 1997 WL 258491, at *2 (D. Mass. Apr. 2, 1997) ("A parent company is not responsible for its subsidiary's tortious acts unless the parent assumes a duty of care with respect to a particular aspect of the subsidiary's affairs . . . .") (citing *Muniz v. Nat'l Can Corp.*, 737 F.2d 145, 149 (1st Cir. 1984)).

Plaintiffs allege that Carnival "undertook an independent duty to develop, promulgate, and enforce adequate safety standards and procedures aboard the *Grand Princess*." (Opp'n at 13, ECF No. 93.) Carnival also placed overall responsibility for ensuring Princess's compliance with Carnival's HESS policy in Carnival's own officer, and Carnival "monitored and supervised" Princess's safety requirements. (TAC ¶ 75.) Taking these allegations as true, Plaintiffs have sufficiently alleged that Carnival exerted control over Princess's safety procedures to establish that Carnival owed Plaintiffs an independent duty of care. Thus, the Court declines to dismiss Carnival at this time.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-04203-RGK-SK | Date | November 25, 2020 |
|---|---|---|---|
| Title | *Robert Archer et al v. Carnival Corporation and PLC et al* | | |

    *c.*    *Agency Relationship*

The Court has already declined to dismiss Carnival at this time. Thus, the Court does not reach Plaintiffs' argument about the existence of an agency relationship.

    2.    <u>Causation</u>

    *a.*    *The Plaintiffs Who Did Not Test Positive for COVID-19 or Experience Any Symptoms*

As an initial matter, the Court finds that Plaintiffs who do not allege that they either contracted COVID-19 or suffered symptoms of the disease fail to state a claim for negligence or gross negligence for the same reasons set forth in *Weissberger v. Princess Cruise Lines, Ltd.*, No. 2:20-cv-02267, 2020 WL 3977938 (C.D. Cal. July 14, 2020). These Plaintiffs assert a stand-alone claim for emotional distress—i.e., they do not allege that a physical injury provoked their emotional distress. Thus, they must satisfy the zone of danger test set forth in *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532 (1994). *See Norfolk & Western Ry. Co. v. Ayers*, 538 U.S. 135, 147 (2003). They cannot recover under the first prong of this test because the physical-impact requirement is not satisfied by mere exposure to a disease. *See Metro-North Commuter R. Co. v. Buckley*, 521 U.S. 424, 432 (1997) ("the words 'physical impact'. . . do not include a contact that amounts to no more than an exposure…to a substance that poses some future risk of disease[.]") Nor can they recover under the second prong because this would lead to "bizarre results[.]" *Weissberger*, 2020 WL 3977938, at *3. As explained in *Weissberger*, "[u]nder *Metro-North*, a passenger aboard the Grand Princess who was merely exposed to an individual with COVID-19 could only recover under the first prong of the zone of danger test if they either contracted COVID-19 or manifested symptoms of it. Yet under Plaintiffs' proposed interpretation, that same passenger could recover without manifesting any symptoms whatsoever so long as they cleverly pled their claim under the second prong of the test." *Id.*

Plaintiffs argue that the decision in *Weissberger* and application to this case is an "unsupported extension of *Metro-North* that impermissibly writes the second prong of the *Gottshall*'s zone of danger

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-04203-RGK-SK | Date | November 25, 2020 |
| Title | *Robert Archer et al v. Carnival Corporation and PLC et al* | | |

test out of the law." (Opp'n at 7.) But this is merely an attempt to relitigate the Court's prior decision. Thus, the Court rejects Plaintiffs' contention.

Accordingly, the Court dismisses the negligence and gross negligence claims of the Plaintiffs who do not allege that they either contracted COVID-19 or experienced any symptoms of the disease.[2] This dismissal is with prejudice, as leave to amend would be futile. *See Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988).

    b.  *The Remaining Plaintiffs*

Defendants contend that Plaintiffs Gene Qin, Arlina Pangilinan, Robert Archer, Marlene Archer, Jacqueline Graham, and Robert Graham should be dismissed because they fail to allege when they either tested positive for COVID-19 or antibodies despite the Court's prior Order. (Order at 8) ("[T]hey must allege *when* they tested positive for COVID-19 and/or COVID-19 antibodies . . . ."). But Plaintiffs' failure to allege when they tested positive does not warrant dismissal. A few sentences prior, the Court stated that Plaintiffs had insufficiently alleged causation because they do not "allege *when* they tested positive for COVID-19, when they tested positive for COVID-19 antibodies, *or when they first began experiencing symptoms*." (Order at 8) (own emphasis added). Thus, if Plaintiffs did not allege when they tested positive for COVID-19 or antibodies, they may still allege when they first began experiencing symptoms.

Similarly, Defendants argue that the Court should dismiss the remaining Plaintiffs because they have failed to "allege that 'they tested positive for COVID-19,' and have therefore failed to allege causation." (Mot. Dismiss at 6, ECF No. 89.) But the Court never required that all Plaintiffs affirmatively allege that they tested positive for COVID-19 to satisfy causation. Plaintiffs need only allege facts to raise a plausible inference that Defendants negligently exposed Plaintiffs to COVID-19, that Plaintiffs contracted the sickness, and that they were injured by it. *See Iqbal*, 556 U.S. at 678.

---

[2] Specifically, the Court dismisses the negligence and gross negligence claims brought by: (1) Michael Giusti; (2) Valerie Pasquini Willsea; (3) Michael Neky; (4) Joseph Clark; (5) Viola Clark, (6) Raul Pangilinan; (7) Dency Pangilinan; (8) Amy Rothman; (9) Joseph Ballin; (10) Victoria Ballin; (11) David Leandres; (12) Dianne Leandres; (13) Brenda Skinner; (14) Julie Phillips; (15) Raymond Pena; (16) John Bekhazi; (17) Leonard Owen; (18) Dorothy Owen; (19) Charles Nurre; (20) Samuel Arreaga; (21) Hilda Arreaga; (22) David Chen; (23) Jean Chen; (24) Katherine Hinton; (25) Norma Berkowitz; (26) Debra Leonelli; (27) David Rege; (28) Roseanne Eads; (29) Suzanne Suwanada; (30) Gurvinder Bhasin; (31) Harvinder Bhasin; (32) Gary Pilgram; and (33) Patricia McGinnis.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-04203-RGK-SK | Date | November 25, 2020 |
| Title | *Robert Archer et al v. Carnival Corporation and PLC et al* | | |

Plaintiffs have adequately alleged causation. First, Plaintiffs aver that they had no symptoms of COVID-19 or exposure to anyone exhibiting symptoms prior to boarding. Second, they allege that they were exposed to COVID-19 while on the ship because they either "attended events and activities where [they were] in close proximity to numerous other passengers and crew members," (*e.g.* TAC ¶ 207), or they were seated with other passengers "who had been on the M/V GRAND PRINCESS's San Francisco-Mexico voyage and had remained on board," (*e.g. id.* ¶ 183). Finally, Plaintiffs allege that their symptoms began within 14 days of their purported exposure—the usual incubation period of COVID-19. Taking these allegations, Plaintiffs have alleged sufficient factors to render causation plausible. The Court therefore declines to dismiss Defendants' Motion to Dismiss on that basis.

       3.      <u>*Defendants' Notice of a Risk-Creating Condition*</u>

"A carrier by sea does not serve as an insurer to its passengers; it is liable only for its negligence." *Cohen v. Carnival Corp.*, 945 F. Supp. 2d 1351, 1355 (S.D. Fla. 2013) (citing *Weiner v. Carnival Cruise Lines*, No. 11–cv–22516, 2012 WL 5199604, at *2 (S.D. Fla. Oct. 22, 2012)). To impose liability on a common carrier vessel owner for injuries suffered by a passenger, the maritime standard of reasonable care under the circumstances ordinarily requires that the carrier have had actual or constructive notice of the risk-creating condition. *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989); *Cohen*, 945 F. Supp. 2d at 1355. "Constructive notice requires that a defective condition exist for a sufficient interval of time to invite corrective measures." *Cohen*, 945 F. Supp. 2d at 1355 (citations omitted). A cruise line must warn passengers only of those dangers that "the cruise line knows or reasonably should have known," and "which are not apparent and obvious to the passenger." *Weiner*, 2012 WL 5199604, at *2 (internal citations omitted).

While the parties contest whether Defendants had sufficient notice about the dangers of COVID-19 prior to disembarking from San Francisco on February 21, Defendants owed Plaintiffs a duty of care to warn them of potential dangers *the entire time* Plaintiffs were on the ship. Plaintiffs allege that Defendants notified the *Grand Princess's* San Francisco-Mexico passengers about their potential exposure to COVID-19 on the ship on February 25. (TAC ¶ 153.) Thus, at least on February 25, 2020, Defendants had actual notice of the risk-creating condition—the presence of COVID-19 on the ship— and did not alert its current passengers. *Id.* Accordingly, the Court denies Defendants' Motion to Dismiss for failure to allege notice of a risk-creating condition.

      **B.**      <u>**Injunctive Relief**</u>

Plaintiffs seek injunctive relief because Plaintiffs "face a real threat that, absent an injunction, they are likely to be subject to the same acts and omissions by CARNIVAL and PRINCESS that will once again expose them to COVID-19 and/or other communicable disease that will cause them injury

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-04203-RGK-SK | Date | November 25, 2020 |
|---|---|---|---|
| Title | *Robert Archer et al v. Carnival Corporation and PLC et al* | | |

and emotional harms." (TAC ¶ 290.) Defendants argue that Plaintiffs' request for injunctive relief must be dismissed because Plaintiffs lack Article III standing to seek prospective relief. The Court previously dismissed without prejudice Plaintiffs' request for injunctive relief because they "ha[d] not adequately alleged that the threat of *future injury* is imminent." (Order at 10.)

To satisfy Article III, a plaintiff must establish (1) an injury-in-fact that is (2) fairly traceable to the challenged action of the defendant and (3) redressable by a favorable ruling from the court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The plaintiff "bears the burden of showing that he has standing for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). "To seek injunctive relief, a plaintiff must show that he is under threat of suffering [an] 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Id.* (quoting *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180–81(2000)). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561.

Plaintiffs aver that they have now adequately alleged standing because some Plaintiffs have bought tickets and intend to take future cruises with Princess in 2021. But to establish standing, the "threatened injury must be *certainly impending* to constitute injury in fact" and "allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). Here, Plaintiffs' threat of future harm is neither "certain," nor are the injuries "actual and imminent"—they are purely conjectural. It is not certain that Plaintiffs will actually board any of Princess's future cruises because each qualify their intentions with, "if, among other things, Defendants implement effective policies to protect the health and safety of their passengers." (*e.g.* TAC ¶ 277.) Such qualifications are insufficient to establish the certainty necessary for Article III standing. In addition, Plaintiffs' alleged injuries are hypothetical. The TAC does not allege that COVID-19 will still be an issue when Plaintiffs decide to take their trip or that Princess will not have implemented corrective measures to prevent the harm of COVID-19.

Next, Plaintiffs argue that the decision in *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018) allows them to establish in standing. In *Davidson*, a plaintiff brought an action against a manufacturer for falsely advertising that the manufacturer made flushable wipes. *Id.* at 962. The Ninth Circuit found that the plaintiff had Article III standing to seek injunctive relief because the plaintiff "faces a threat of imminent or actual harm by not being able to rely on [the manufacturer's] labels in the future, and that this harm is sufficient to confer standing to seek injunctive relief." *Id.* at 966–67. *Davidson*'s holding, however, was restricted to the false advertising or labeling context. *Id.* at 969 ("We hold that previously deceived consumer may have standing to seek an injunction against *false advertising or labeling*, even though the consumer now knows or suspects that the advertising was false

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-04203-RGK-SK | Date | November 25, 2020 |
|---|---|---|---|
| Title | *Robert Archer et al v. Carnival Corporation and PLC et al* | | |

at the time of the original purchase because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm.") (quoting *Summers*, 555 U.S. at 493) (own emphasis added)). Because Plaintiffs do not base their claims on false advertising or labeling, *Davidson* has no application.

As the Court has already granted leave to amend, the Court now dismisses Plaintiffs' claim for injunctive relief.

**C.   Punitive Damages**

Finally, Defendants argue that Plaintiffs' prayer for punitive damages are barred as a matter of law because there is an "absence of case law supporting the availability of punitive damages under maritime for *negligent* behavior . . . ." (Mot. Dismiss at 22.) Plaintiffs do not, however, base their punitive damages request on Defendants' negligent conduct, but on their gross negligence and intentional infliction of emotional distress claims. And the Ninth Circuit has held that punitive damages are available in the maritime context for conduct that demonstrates a "'reckless or callous disregard' for the rights of others or for conduct which shows 'gross negligence or actual malice or criminal indifference.'" *Churchill v. F/V Fjord*, 892 F.2d 763, 772 (9th Cir. 1988) (quoting *Protectus Alpha Navigation Co. v. N. Pac. Grain Growers, Inc.*, 767 F.2d 1379, 1385 (9th Cir. 1985)).

Next, Defendants argue that *The Dutra Group v. Batterton*, 139 S. Ct. 2275 (2019) bars Plaintiffs' recovery for punitive damages. In *Batterton*, the Supreme Court considered whether a seaman could recover punitive damages on a claim for unseaworthiness. It concluded that he could not because the caselaw did not demonstrate a history of awarding punitive damages for unseaworthiness claims. *Id.* at 2284 ("Batterton presents no decisions from the formative years of the personal injury unseaworthiness claim in which exemplary damages were awarded. From this we conclude that . . . unseaworthiness did not traditionally allow recovery of punitive damages."). Based on *Batterton*, Defendants argue that Plaintiffs must point to caselaw that permits an award of punitive damages "based on grossly negligent conduct that caused exposure to a disease" and that Plaintiffs have failed to do so. (Reply at 9, ECF No. 94.) But Defendants read *Batterton* too narrowly. As Judge Fischer articulated in *Birkenholz v. Princess Cruise Lines, Ltd.*, No. 20-CV-3167 DSF(JCx), at *10 (C.D. Cal. Aug. 21, 2020), "[t]he question considered in *Batterton* was not whether a court had previously awarded punitive damages based on similar facts, but whether punitive damages had been awarded for similar legal claims—here, that is claims for gross negligence resulting in personal injury to a nonseaman." As neither party has directly answered this question, the Court declines to find that punitive damages are barred as a matter of law at this time.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-04203-RGK-SK | Date | November 25, 2020 |
|---|---|---|---|
| Title | *Robert Archer et al v. Carnival Corporation and PLC et al* | | |

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Defendants' Motion.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | jre |